## AUGUSTE TREPTOW V. HENRY BUSE, *et al.*

1. JUSTICE'S JUDGMENT; *Transfer to District Court.* For the purpose of transferring a judgment from a justice of the peace to the district court, the abstract authorized by § 119 of the Justice's Act is sufficient, and a full transcript is unnecessary.

2. SHERIFF SALE of REAL ESTATE; *Publication of Notice.* In sales of real estate upon execution, an advertisement in a weekly newspaper is sufficient, provided the first publication is at least thirty days before the sale, and the advertisement is continued in each successive issue up to that time.

3. ———— *What Interest to be Sold.* An advertisement that the sheriff will sell all the right, title and interest of the defendants in certain real estate, "taken as the property of defendants," is sufficient notice of an attempt to sell and convey a full title.

4. JUDICIAL SALE; *Title of Purchaser.* A sheriff selling upon execution gives no warranty, and the purchaser takes only the interest of the defendant.

5. LEVYING ON LANDS. A return upon an execution that the officer is unable to find any goods and chattels of defendants on which to levy, is sufficient to sustain a levy on real estate even though he fails to indorse the exact expression, "No goods."

6. ———— *Search for Personal Property.* A return that the officer received the writ at 4 o'clock P. M., that he could find no goods and chattels, and for want thereof at 4 o'clock P. M. of same day levied on certain rea estate, will not vitiate the levy, as showing that he could not have made any search for personal property for want of time.

7. ———— *Return of No Goods.* Where the officer returns that he could find no goods and chattels, it will not be overthrown by an affidavit of one defendant that the other defendants *had* personal property subject to execution without showing what or where it is.

8. PROCEEDINGS TO SET SALE ASIDE; *Motion by a Stranger to the Record.* Where the district court overrules a motion to set aside a sale made by one not a party to the record, but claiming title to the property sold, the supreme court will not reverse such decision when it appears that there is a question whether the title was in defendant or such third party. The decision of the court upon such motion does not conclude either party.

*Error from Douglas District Court.*

ON the 26th of June 1871 the defendants in error filed in the office of the clerk of the district court an abstract of a judgment rendered in their favor by a justice of the peace. Said abstract was in the following words:

Statement of the Case.

In Justice's Court—Before Charles Chadwick, Justice of the Peace, Lawrence Township:

Henry Buse, Fred. Buse, Jacob Knuhl, plaintiffs, against Carl F. W. Treptow, Jacob Kalb, Adam Lanck, and August Urban, defendants. } Abstract of Judgment.

May 3, 1871; action for labor as mechanics.

Judgment for plaintiffs, for debt,..................$167 86
Costs of suit,........................................... 5 45——$173 31
Increase costs, constable's fees on execution,............ 3 95
                                                                        ————
                                                                        $177 26

Douglas County, ss.: I hereby certify that the foregoing is a full and correct abstract of a judgment rendered by me in the suit above entitled.

Charles Chadwick, *Justice of the Peace.*

Fees—Transcript, 10c; certificate, 25c=35c.

The clerk of the district court docketed said judgment, and on plaintiffs' precipe therefor issued an execution thereon directed to the sheriff of Douglas county. On the 16th of August said execution was returned by the sheriff to the clerk's office of said court with the following return indorsed thereon:

"Douglas County, ss. Received this execution the 26th day of June 1871, at 4 o'clock P.M.; and after diligent search I have been unable to find any goods or chattels of the within named defendants, and on the same day, at 4 o'clock P.M., I executed this writ by levying the same on lot No. 65, Rhode Island street, Lawrence, Kansas; and on the 5th of July 1871 I summoned O. P., W. M., and J. C., three disin-, terested householders of said county of Douglas, impartially to appraise the above described lot of land, (see appraisement hereto attached, marked "A," and made a part of this return,) a true copy of which appraisement I forthwith deposited with the clerk of the court from which this writ was issued. And on the 3d of July 1871, I caused a notice to be published in the *Democratic Standard,* a weekly newspaper published in said county of Douglas, in which the above described lands are situated, and of general circulation therein, which notice was published for five consecutive weeks. (See notice hereto attached marked "B," and made part of this return.) And at the time and place stated in said notice I sold the said lands to W. W. Walter for the sum of $584.50, he being the highest and best bidder therefor, and that sum being more than two-thirds of the appraisement. Given under my hand this 14th day of August, 1871.

"Samuel Walker, *Sheriff Douglas Co., Kas.*"

Exhibit "B," being the notice of the "sheriff's sale" referred to in said return, after the caption and title, is as follows:

"By virtue of an execution to me directed, issued out of the district court of Douglas county, I will on Monday, the 14th day of August 1871, at 2 o'clock P.M. of said day, at the front door of the court-house in the city of Lawrence, county of Douglas, state of Kansas, offer for sale at public auction to the highest bidder for cash in hand, (for want of goods and chattels,) all the right, title, and interest whatsoever of the said above-named defendants in and to the following described lands and tenements, to-wit, Lot No. 65, Rhode Island street, in the city of Lawrence, Douglas county, Kansas; appraised at $875, and taken as the property of C. F. W. Treptow, et al., and to be sold to satisfy said execution. Given under my hand at my office in the city of Lawrence this 3d of July 1871.

"SAMUEL WALKER, Sheriff Douglas Co., Kas."

On the 31st of January 1872, Auguste Treptow, (wife of said Carl F. W.,) appeared and filed a motion which, after the caption and title, is as follows:

"Now comes Auguste Treptow, a party affected by the sale of the real estate in the above entitled action made by the sheriff of Douglas county on the 14th of August 1871, under and by virtue of an execution issued out of said court in said action on the 26th of June 1871, and moves the court to set aside the levy and sale under said execution of the following described real estate, to-wit, Lot 65, on Rhode Island street, in the city of Lawrence, Douglas county, state of Kansas, on the ground that said Auguste Treptow was the owner of said real estate at the time and before said judgment became a lien on said real estate, and at the time of said levy and sale under said execution; and that she did, prior to said sale, and does now, own and occupy said real estate as a homestead.

"A. J. REID, Atty. for Auguste Treptow."

Due notice of the filing of said motion, and that the same would be brought on for hearing, was given to plaintiffs' counsel. Said Carl F. W., and said Auguste, filed their separate affidavits in support of said motion — said Carl stating "that at the time the said abstract of judgment was filed in the said district court, he did not own, nor had he at any time

since owned" said lands, or any interest therein; and the said *Auguste* stating that —

"On the 24th of June 1871, the said Carl F. W. Treptow conveyed the said premises in fee simple to one Fredericke Belon, and that on the 26th of said June the said Fredericke Belon and husband conveyed the same to this affiant; that said conveyances were made in good faith, and for a good and valuable consideration; * * * and affiant further says that she is occupying said premises as a homestead."

The said *Carl* also filed another affidavit, in which he stated that "Jacob Kalb, Adam Lanck, and August Urban," his co-defendants in the original judgment, "at the time said execution was levied upon said real estate, each owned and possessed personal property to a considerable amount, liable under the law to be levied upon under said execution, and applied to the satisfaction of said judgment."

The purchaser at such sheriff sale, *Walter*, filed his motion to confirm the said sale. His said motion, and that of said *Auguste* to set said sale aside, came on to be heard at the February Term 1872 of the district court. The record shows that —

"Said affidavits of the defendant Carl F. W. Treptow, and said affidavit of Auguste Treptow, with the deeds thereto attached, were offered in evidence by said Auguste Treptow, but the court refused to admit and rejected said evidence; and to the judgment of the court rejecting said evidence, the said Auguste Treptow by her attorneys then and there excepted."

The court refused and denied the motion of the said *Auguste* to set said sale aside, and sustained the counter motion of the purchaser, and confirmed the sale. And from said decision and orders the said *Auguste Treptow* appeals, and brings the case here by petition in error.

*A. J. Reid,* and *B. J. Horton,* for plaintiff in error:

1. The court erred in not permitting Mrs. Treptow to be heard on her motion to set aside the sale, and in not admitting in evidence her affidavit with the title papers attached, showing her to be the owner of the property. Any one interested

in or affected by a suit or proceeding, is a proper party to a motion to set aside a sale: Code, § 532; *White-Crow v. White-Wing,* 3 Kas., 280, 281. The decision in the case of *Stark v. Chitwood,* 5 Kas., 141, does not in any respect conflict with the case of *White-Crow v. White-Wing.* This latter case recognizes the doctrine laid down in *Stark v. Chitwood,* and the basis of decision in *White-Crow v. White-Wing* was, first, that under § 515 of the code of 1862, (which was amended in 1868, code, § 532, by the addition of the words, *"or affected thereby,"*) *the owner* had a right to make such a motion; and, second, that the sheriff was not authorized to sell any property but that of the judgment-debtor, and that if he attempted so to do, it was the duty of the court to stop him, and in that way to prevent the necessity and expense on the part of the owner of defending or prosecuting his title against the purchaser at such sale. The *owner* is affected by the proceedings, for he may be put to the necessity of defending or prosecuting his title or possession as against such purchaser.

2. We claim that the purchaser at a judicial sale, who acquires no right to or interest in the property until after a confirmation, and to whom the rule of *caveat emptor* applies in all its rigor, and who would not be allowed to resist a confirmation, nor be a party to a motion to set aside a sale for any irregularities in the proceedings, or defect of title, cannot be said to be, in any respect, interested in or affected by the proceedings; and to permit him to make this motion, and confirm the sale upon said motion, is clearly erroneous.

3. Mrs. Treptow had a right to show that said lot was a homestead; and as the wife of the judgment-debtor, to contest any proceeding that attempted to take the homestead away from her. *Dollman v. Harris,* 5 Kas., 596, 599, 600; *White-Crow v. White-Wing,* supra.

4. The proceedings of the sheriff were irregular, and not in conformity with art. 20 of the code, Gen. Stat., 715. The return does not show "No goods." The return shows upon its face that the sheriff made no search for personal property; he received the execution at 4 o'clock P.M., June 26, and at

4 o'clock P. M. of the same day he levied on the lot. In this state of fact, the affidavit of Treptow not contradicting the record, was competent to show that there was personal property subject to levy, and it was error to reject it. But whether competent or not, the record does not show affirmatively that there was no personal property. (*Kœhler v. Ball*, 2 Kas., 173.)

5. The advertisement does not advertise the *land* to be sold, but the *interest* of the judgment-debtor in the land. The levy must be on the *land*, and the *land* must be appraised. Code, §§ 448, 453. A levy on or an appraisement of the *interest* of the debtor in the land is not sufficient or valid: *Blair v. Kirtland*, 8 Ohio, 21, 26. So it is the *land* that must be advertised and sold, and not the *interest* of the judgment-debtor in the land: Code, § 457. The advertisement had a tendency to mislead and keep away purchasers. Purchasers desire to buy *land*, and not the *interest* of judgment-debtors in land.

6. The advertisement was not sufficient as to time: Code, § 457. It was evidently the intention of the legislature that the advertisement should be for a period not less than thirty days. If published in a daily paper, thirty insertions are required; or if published in a weekly, six consecutive insertions are necessary, as five insertions would cover a period of four weeks only.

7. The execution and levy were illegal. The filing of an *abstract* did not satisfy the conditions of the statute. A transcript should have been filed: Code, §§ 518 to 521. Transcript and abstract are never used as synonymous terms; a transcript being a full and complete copy, while an abstract is an abridgment or compendium. Section 119 of justice's act is general and indefinite; it seems to be thrown in as a statement of an abstract proposition, without any apparent connection with what precedes, or with what follows it. There is nothing in the section by which it can be determined whether the legislature had reference to docketing in cases of appeal, or in cases for lien or execution, or to what class of cases they did have reference. There is certainly nothing

in § 119 of the justice's act to indicate that the legislature intended that the abstract defined in that section should supply the place of the transcript provided for in § 518 of the civil code.

[No appearance for defendants in error.]

The opinion of the court was delivered by

BREWER J.: This is a proceeding in error to reverse the order of the district court of Douglas county overruling a motion to set aside, and sustaining a motion to confirm, a sale of real estate. Several points are presented and urged with ingenuity and force. We will reverse the order of counsel for plaintiff in error, and consider first the last point in his brief. The judgment upon which these proceedings were had was rendered in a justice's court. An abstract of that judgment, under § 119 of the justice's act, was docketed in the district court, and thereupon from that court issued the execution to the sheriff. Counsel claims that under § 518 of the code a *transcript* of the judgment must be filed in the district court to support such proceedings as were had. We think not. True, a transcript could be filed, and would justify like proceedings. But we think the abstract must have the same force as a transcript. Sec. 119 is in art. 9 of the justice's act, an article entitled and devoted to the matter of "Judgments." The section reads: "For the purpose of docketing in the district court the abstract of a judgment of a justice of the peace shall be in the following form," etc. This obviously contemplates a transfer of the judgment from one court to the other. "For the purpose of docketing in the district court." Docketing what? The judgment. But if the judgment be transferred to the district court, then, in the absence of words of limitation, it becomes subject to the same rules, and vested with the same powers as though originally rendered in that court. This works no hardship. So far as the matter of the indebtedness is concerned, that is settled as conclusively by the judgment of the justice

1. Justice's judgment; transfer to district court.

as it could be by that of the district court. It would be in either case *res adjudicata*. All that is gained by transferring is additional means of enforcing payment; and if the debtor fails to pay he has no legal cause of complaint if the creditor pursues the ordinary methods of enforcing payment.

The next point is that the advertisement of the sale was not sufficient as to time. The first publication was on July 13th. The sale on August 14th. The publication was in the weekly paper, and was repeated each consecutive week from the time of the first publication to the day of sale. This we think satisfies the statute. It is not necessary that the notice be in a daily paper. A weekly is sufficient. Nor does the statute call for publication for a certain number of weeks. It says notice "must be given by advertisement for at least thirty days before the day of sale." Civil code, § 457. Here the notice was published more than thirty days before the sale, and was continued through every successive issue of the paper until that time.

Again, it is claimed that the advertisement does not advertise *the land* to be sold but "*the interest* of the judgment-debtor in the land." The return of the sheriff shows that he levied upon the land, and that the land was appraised. The advertisement gives notice that he will sell "all the right, title and interest whatsoever of the defendants in the land," describing it, "appraised at $875, and taken as the property of C. F. W. Treptow, *et al.*, and to be sold to satisfy said execution." All that the sheriff can sell and convey is the interest of the defendant. He of course gives, and proposes to give no warranty; but he proposes to sell no limited interest, no equity of redemption, no leasehold estate. He gives notice that the land has been taken as the property of the defendants, and their interest therein he will sell. No one would be misled as to what was offered for sale. It clearly indicates that while the officer gave no warranty he was attempting to sell and convey a full and perfect title. Again, it is urged that the return does not show "no goods." The return shows

*2. Sheriff sale; publication notice.*

*3. Sale of land. Interest of defendant.*

*4. Sheriff gives no warranty.*

upon its face that the sheriff made search for personal prop-
erty.   He received the execution at 4 o'clock P. M.,
June 26th, and at 4 o'clock P. M. of the same day
levied on the lot.   The exact expression, "No goods," need
not be indorsed upon the execution.   It is sufficient if the
return show that the officer was unable to find any goods and
chattels.   Here he returns that "after diligent search I have
been unable to find any goods or chattels of the within-named
defendants."   True, he returns that he levied the execution
on the land at the same time that he received it, so that he
does not seem to have had very much time for searching after
personal property.   But for aught that appears he may have
had ample time.   He may have been so familiar
with the financial condition of defendants as to
know that they had no personal property.   They
may have been standing by when he received the execution,
and assured him they had none, and sent him to the real
estate.   At any rate, we are not justified in assuming that the
return is untrue.   For any wrong done by his return, both
himself and bondsmen are liable.   And if the defendants had
personal property, and wished to save their real estate, they
had ample time to turn such property over to him before the
sale.   It is claimed that the affidavit of Carl F. W. Treptow
offered on the motion to set aside the sale contradicted this
return of the sheriff.   The judgment was against four defend-
ants.   The real estate was taken as the property of one.   He
makes the affidavit that the other defendants had
personal property subject to seizure at the date
of the execution, but he nowhere describes such
property, or points out where it may be found.   It would be
trifling to set aside a return upon such an affidavit.   The
other defendants may have personal property.   So may Trep-
tow himself.   But if they have it so concealed that the sheriff
cannot find it, of what avail is it to the creditor?   If they
have personal property, let them turn it over, or point it out
to the sheriff; and then if he persists in selling the realty
they may have some cause of complaint.

*Margin notes:*
5. Return of "No goods."

6. Search by sheriff for personal property.

7. Affidavit to impeach sheriff's return must be certain and specific.

The last point to be considered is this: Mrs. Treptow claims that the property was hers, and not her husband's, and that it was her homestead, and exempt from seizure upon execution. Testimony was offered to support this claim. From that testimony it appears that the judgment before the justice was rendered May 31st, 1871. At that time the title to the property was in Carl F. W. Treptow. On the 26th of June 1871 the abstract of judgment was docketed in the district court. Intermediate these dates, and on the 24th of June, Treptow and wife conveyed to Frederieke Belon, and on the 26th of June Frederieke Belon and husband conveyed to Mrs. Treptow. The affidavits filed allege that these conveyances were in good faith, and for a valuable consideration. One affidavit also alleges that Mrs. Treptow is occupying the property as a homestead. Upon this testimony ought the district court to have set aside the sale? Or perhaps more correctly, was there such manifest error as will justify us in reversing the ruling of that court? A question of similar import was before this court in the case of *White-Crow v. White-Wing*, 3 Kas., 276. In that case the decision of the district court was in favor of the motion to set aside the sale, and the supreme court sustaining the decision use this language: "But it may be asked, where would you stop? If the showing indicated the existence of a substantial question as to the ownership between the debtor and a third person; or, if it should appear that the debtor had some sort of an interest in the property, the motion ought to be overruled. A decision either way would not affect the ultimate right of the parties, nor be a bar to an action to determine which was the owner. It would be impossible to fix an abitrary boundary which would not in some instance work great injustice. The court must be allowed a reasonable discretion in each case in determining what shall, and what shall not be sufficient ground to set aside a sale." Now it cannot be denied that the time and manner of these conveyances, being a conveyance from husband to wife through a third party after judg-

<div style="margin-left:2em; font-size:smaller;">
8. Rights of third party, and homestead rights, not to be determined on motion to set aside a sale.
</div>

ment before a justice, and just prior to the transfer of the judgment to a court in which it would be a lien on real estate, naturally raise a suspicion as to the *bona fides* of the transaction. True, both husband and wife in their affidavits swear that it was *bona fide;* but we cannot say that the district court abused its discretion when it decided to let the question go before a jury in an action of ejectment. It must be remembered that this decision on the motion is not conclusive as to the facts. If the conveyance was in good faith, and for a valuable consideration, or if the property is her homestead, these facts can be shown in defense to an action of ejectment by the purchaser. No writ of assistance runs to put him in possession. He must bring his action at law, and either party will then be entitled to a jury. We fail to see how the error, if error there was, has wrought injury to the substantial rights of the plaintiff in error. The order of the district court will therefore be affirmed.

All the Justices concurring.