**HARRIS et al. v. GRAYSON et al.**

No. 11654—Opinion Filed May 29, 1923.

Rehearing Denied July 3, 1923.

(Syllabus.)

1. **Indians — Descent and Distribution — Creek Allotment—Second Descent.**

The Supplemental Creek Agreement of June 30, 1902, 32 Stat. at L. 500, providing that the descent of Creek allotments should be according to chapter 49 of Mansfield's Digest of the Laws of Arkansas, and the proviso of section 6 of said treaty, providing: "That only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation: And provided further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49—" held, said proviso controls and confines the devolution of the allotment of a deceased Creek allottee on first descent to Creek citizens or their Creek descendants, but is inapplicable on second descent of such allotment, and the descent of such an allotment, after first descent, is controlled by the applicable provisions of chapter 49 of Mansfield's Digest of the Statutes of Arkansas.

2. **Same—Erroneous Judgment.**

Record examined, and held, that the trial court committed reversible error in applying the provisions of the proviso of section 6 of said treaty to the estate of the deceased, such deceased having died in April, 1907, and

said estate not being the allotment of said deceased, but having come to said deceased by inheritance.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Isom Grayson et al. against James A. Harris et al. to recover certain lands located in Creek County. Judgment for plaintiffs. Defendants appeal. Reversed and remanded, with directions.

Geo. S. Ramsey, G. Earl Shaffer, and Robert F. Blair, for plaintiffs in error.

Thos. H. Owen, A. A Hatch, Watts & Watts, Gidney & Gidney, Turner & Turner, W. T. Hunt, A. C. Hunt, Wallace & Stevens, J. T. Smith, John E. Williams, and Alvin F. Molony, for defendants in error.

PER CURIAM. This appeal is prosecuted from a judgment of the district court of Creek county, Okla., decreeing possession and ownership of the lands involved therein to the plaintiff Isom Grayson and others, who filed said suit in said court against James A. Harris and William H. Harris and others. The facts out of which the litigation arises are briefly these:

An undivided one-half interest in two allotments was sued for by the plaintiffs. One allotment was made in the name of Nancy Colbert, a freedman citizen of the Creek Nation, roll No. 5641, who departed this life in the year 1900. The other allotment was made in the name of Garfield Colbert, a freedman citizen of the Creek Nation, roll No. 5640. At the time of the death of the two allottees, the lands in question had not been set apart to them. The lands were set apart in their names in the summer of 1906, and at that time one Gertrude Grayson succeeded to the half interest in question by operation of law in both said allotments. The said Gertrude Grayson departed this life in April, 1907, intestate, never having been married, and without issue, and it is the interest which the said Gertrude Grayson is admitted to have had at her death that is in controversy here. The other half interest is not in litigation, and there is no occasion to make reference thereto.

There are several questions raised by the plaintiffs in error for reversal of the cause, but no useful purpose can be served by a discussion of any of the questions involved other than the one controlling the proper disposition of the case. The record discloses, and it is not disputed, that at the time of the death of the said Gertrude Grayson, who succeeded to the half interest in the said land on the selection thereof as one of the heirs of the persons in whose names the land was set apart, she left surviving her as her sole heir at law her maternal grandmother, Cloria Grayson, if the general provisions of chapter 40 of Mansfield's Digest of the Statutes of Arkansas are held to govern the devolution of the property on the death of the said Gertrude Grayson, and are not superseded by the proviso to section 6 of the Supplemental Creek Agreement of July 1, 1902. The said Gertrude Grayson took this land free from restrictions imposed by the act of Congress, and she could have alienated the same, but for the fact that she was a minor, only 15 years of age, at the time of her death. The question is, Which of her relatives inherited from her the property in controversy?

The defendants in error, the plaintiffs below, were related to her, the degrees, etc., of which relationship it is unnecessary to discuss. They are citizens of the Creek Nation. Gertrude left surviving her a maternal grandmother, Cloria Grayson, a noncitizen of the Creek Nation. Had Cloria Grayson been a citizen of the Creek Nation, it is not disputed that she would have inherited the half interest owned by Gertrude at the time of her death, and the plaintiffs in error, James A. Harris and William H. Harris, by mesne conveyances from the said Cloria Grayson, are the unquestioned owners of the one-half interest in said land which they claim. But said Cloria Grayson, maternal grandmother, as aforesaid, of the said Gertrude, being a noncitizen of the Creek Nation, the right of the said plaintiffs in error to a judgment in their favor —not now discussing the other questions in issue—depends upon whether or not the said Cloria Grayson, a noncitizen, could take the inheritance from Gertrude Grayson.

If the said Cloria Grayson is cut off from inheriting from her grandchild, Gertrude, it is by reason of the first proviso to section 6 of the Supplemental Creek Agreement. Without quoting section 6, the proviso reads as follows: "Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants, shall inherit lands of the Creek Nation," etc. This draws directly in issue what application, if any, this proviso has to a second inheritance of lands which have been allotted under the allotment acts to the various enrolled citizens of the Creek Tribe of Indians. If this proviso does not exclude Cloria Grayson from inheriting, the general provisions of chapter 49 of Mansfield's Digest, Statutes of Arkansas, which were placed in force in the Indian Territory, of which the Creek Nation was a part, in 1897, and further re-

enacted and placed in force by the act of April 28, 1904 (33 Stat. L. 573), would be the governing law as to this inheritance, and the said Cloria Grayson was the sole heir of Gertrude.

The true intent of Congress and of the Creeks can best be ascertained by looking to the acts carrying out the scheme to divide in severalty the tribal property. Schulthis v. McDougal, 170 Fed. 532.

Section 7 of the Original Creek Agreement made the Creek law applicable only to allotments—by this language referring to the homestead part thereof—"The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after the ratification of this agreement, but if he have no such issue * * * the land (his allotment homestead) shall descend to his heirs, according to the laws of descent and distribution of the Creek nation." Nothing is said as to who shall take on death of the first heirs. At that time, the law of succession contained in chapter 49, Mansfield's Digest, was the law of the forum. It cannot be successfully argued that this provision of the Creek law, governing the descent of the homestead allotment referred to as "the land", extended to abrogate the general statute to such an extent it would not control where the Creek-law heir had once taken and in turn died intestate and seized of the land. A fair reading cannot extend the Creek law further than the first descent, and "the land" other than the allotment specifically mentioned. Section 28 of the Original Creek Agreement has no more extended meaning, except "allotment of lands" and "lands" therein used covered both the homestead referred to in the quoted part of section 7, as well as surplus land, it taking both to make the allotment. Nothing can be read into this section which abrogated the general statute on succession, except as to the first succession, to land referred to therein as "allotment of lands". Section 28, supra, of the Original Creek Agreement of March 1, 1901, after providing as of what date citizens should be enrolled on the final rolls to be prepared by the Commission to the Five Civilized Tribes, recited:

"If any such citizen has died since that time, or may hereafter die before receiving his allotment of lands, and distributive share of all of the funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs, according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly."

Said section 7, supra, of the same act, in effect provided that in case of death, homestead lands allotted to citizens should descend to their heirs, according to the laws of descent and distribution of the Creek Nation.

Shortly thereafter, and in 1902, through the acts of May 27, 1902, and June 30, 1902, the Creek law of descent was changed, and section 6 of the Supplemental Creek Agreement provided:

"The provisions of the act of Congress approved March 1, 1901 (31 Stat. L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed, and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas, now in force in the Indian Territory, provided that only citizens of the Creek Nation, male and female, and their Creek descendants, shall inherit lands of the Creek Nation, and provided further that if there be no person of Creek citizenship or descendants to take the descent and distribution of said estate, the inheritance shall go to noncitizen heirs, in order named in said chapter 49."

It will be useful to properly understand the provisions of section 28 of the Creek Agreement of 1901, as modified by said section 6 of the Supplemental Agreement, to rewrite the said section 28, and incorporate therein the modifying provisions of section 6 of the Supplemental Agreement. And, as so modified, said section 28 would read substantially as follows:

"All citizens who were living on the 1st day of April, 1899, entitled to be enrolled under section 21 of the act of Congress approved June 28, 1898, * * * shall be placed upon the rolls to be made by said commission under said act of Congress, and if any such citizen has died since that time, or may hereafter die before receiving his allotment of lands and distributive share of all the funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs, according to the laws of descent and distribution of chapter 49 of Mansfield's Digest of the Statutes of Arkansas, now in force in the Indian Territory, and be allotted and distributed to them accordingly; provided that only citizens of the Creek Nation, male and female, and their Creek descendants, shall inherit lands of the Creek Nation, and provided further that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49."

The Original Greek Agreement merely purported to provide for the descent of lands

directly allotted thereunder, and did not attempt to control the allotment after it had regularly descended to the heir or heirs of the allottee. The Supplemental Creek Agreement was only intended as a supplement to the Original Treaty; and nowhere in section 6 of said Supplemental Agreement can be found any language to indicate that it was intended to extend the scope of the Original Treaty. It only purported to substitute chapter 49 of Mansfield's Digest for the Creek law of descent as provided in the first agreement, and this was its sole accomplishment. The keystone of the acts touching the division was called "an allotment". In the various acts of Congress the allotment was referred to as "lands allotted to citizens", and also as "allotted lands", but each and all such references were to particular tracts, either as set apart to and vested in an individual citizen of the tribe, or to be set apart, as his proportionate share of the public domain of the tribe. The word "lands" might be considered in the Original Agreement and the Supplemental Creek Agreement as having two meanings: First, it was used in reference to the Creek national domain. Second, it referred to an "allotment", "lands allotted", or "allotted lands". "Allotment", "lands allotted", and "allotted lands", wherever found in the Creek treaties, meant that part of the Creek national domain set aside, or to be set aside, to an enrolled citizen of the tribe; the central idea thereof being the 160 acres provided by law each enrolled citizen should receive, and the person who received it was referred to as the allottee. Section 3 of the Original Creek Agreement provided:

"All lands of said tribe * * * shall be allotted * * * to each citizen 160 acres," etc. —and this particular tract was that to which reference was made throughout the acts of Congress by the use of the words "lands allotted", "allotment", and "allotted lands".

Said section 7 of the Original Creek Agreement, in part, provided:

"Lands allotted to citizens hereunder (it could have said with the same meaning, 'allotments hereunder') shall not in any manner whatsoever or at any time be incumbered, taken or sold to secure or satisfy any debt or obligation contracted prior to the date of the deed to the allottee therefor, and such lands shall not be alienable by the allottee or his heirs," etc.

We find therein throughout limitations and restrictions as to two distinct classes of land—allotments and inherited land.

The terminology "inheritance" carries two elements—the **thing** which passes by the rule of descent from someone who was the prior owner thereof, and the **person** who takes by operation of law. If we interpolate into the provisions of the proviso as above set forth the words of section 7, supra, of the same import, we have it read:

"Provided that only citizens of the Creek Nation and their Creek descendants shall inherit lands (allotted to citizens) of the Creek Nation, and provided, further, that if there be no person of Creek citizenship to take the descent and distribution of said estate (the interest of the allottee or person in whose name they are set apart, in lands allotted to him), then the inheritance (the lands allotted to the citizen who has died) shall go to noncitizen heirs in the order named in chapter 49."

The words in said provisos 1 and 2, to wit, "lands", "said estate", and "inheritance", refer to the same thing, to wit, "the allotment" lands of the Creek Nation set apart to a citizen, and refer to the title which passes to the heir of the allottee. There is nothing in these provisos, when read in the light of the meaning of the terms designating the title passing as "lands", "said estate", and "inheritance", which the various acts show their meaning to be, which has any reference to who shall take such lands by inheritance from a citizen or a descendant of a citizen who had received it by inheritance from the allottee, and in turn died possessed thereof.

In determining the meaning of a statutory provision, and in ascertaining the intent of the lawmakers, words and phrases not used, but necessarily implied from those which are used, are as clearly a part of the act as the written words, and to be so deemed in their appropriate place. 25 R. C. L. p. 976; State v. Phelps (Wis.) 128 N. W. 1041. And if we supply the neccessary words to make the legislative intent clear from the relation of similar words throughout the statutes, we have the proviso reading:

"Providing that only citizens of the Creek Nation, male and female, and their Creek descendants, shall inherit (such) lands (allotted to citizens) of the Creek Nation. Provided, further, that if there be no person of Creek citizenship to take the descent and distribution of the said estate (of the allottee in such lands), then the inheritance from such allottee shall go to the noncitizen heirs in the order named in said chapter 49."

It seems, therefore, that the provisos to section 6 have for their purposes the limitation as to inheritance of Creek allotments, only from the allottee himself, or the first succession.

To hold otherwise, that is, to concur in the argument that the provisos of section 6 of the Supplemental Agreement apply to the second descent in the same manner as they are admitted to apply to descent from the allottee, would be to say that the intent of the government and the tribe was to place a continuous and perpetual restriction upon the lands which once constituted the tribal lands. For if the provisos would apply to the second descent, they would as readily apply to the third and the fourth and on forever. A restriction of this type upon the lands would materially depreciate their value to the owner and would encourage all types of subterfuge to prevent the operation of the provisos. Therefore, in view of the apparent absurdity of such a construction of section 6, supra, this court cannot presume that such was the intent of the parties formulating the Supplemental Agreement.

In the case at bar, it is not disputed that Cloria Grayson, the maternal grandmother of Gertrude Grayson, on the death of the said Gertrude, inherited the land which is now in litigation, unless precluded by reason of her being a noncitizen of the Creek Nation. Since we have reached the conclusion that the said provisos to said section 6 have no application to a second inheritance, as here involved, the devolution of the land in question owned by the said Gertrude Grayson in April, 1907, went to her maternal grandmother, who in turn, in the exercise of her right, conveyed the same; and the title thereto, by mesne conveyances, is vested in the said plaintiffs in error.

The judgment of the trial court should, therefore, be reversed, with instructions to enter judgment quieting the title of the defendants, James A. Harris and William H. Harris, in the lands in controversy.

JOHNSON, V. C. J., and KANE, KENNAMER, NICHOLSON, COCHRAN, BRANSON, HARRISON, and MASON, JJ., concur.