## HUGHES LAND CO. *et al.* v. BAILEY *et al.*

No. 1153.    Opinion Filed November 14, 1911.

(120 Pac. 290.)

1.  **INDIANS—Creek Nation—Distribution of Real Estate.** Under section 6 of the supplemental agreement with the Creek Tribe of Indians, ratified by act of Congress approved June 30, 1902 (Act June 30, 1902, c. 1323, 32 St. at L. 500), citizens of the Creek Nation, male or female, and their descendants of Creek blood, although such descendants be not citizens of the Creek Nation, may inherit the allotted lands of a Creek Indian intestate in the manner and order prescribed by chapter 49 of Mansf. Dig. of the Statutes of Arkansas. **Lamb v. Baker,** 27 Okla. 739, 117 Pac. 189.

2.  **SAME — Descent and Distribution — Creek Allotments.** Under the law of descent and distribution provided by section 6 of the act of Congress approved June 30, 1902 (Act June 30, 1902, c. 1323, 32 St. at L. 500), the daughters of Creek blood of a deceased Creek allottee, inherit the allotted lands of said intestate to the exclusion of the brother of the half-blood of the intestate, who is a citizen of the Creek Nation, though such daughters are not enrolled citizens of the Creek Nation, but instead are enrolled as members of the Seminole Nation.

(Syllabus by Sharp, C.)

*Error from District Court, Okmulgee`County; W. L. Barnum, Judge.*

Action by Pauline Bailey and Polly Brown against the Hughes Land Company and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

*Frank L. Warren* and *Chas. W. Miller,* for plaintiffs in error.

*J. L. Maynard* and *W. S. Turman,* for defendants in error.

Opinion by SHARP, C. Defendants in error brought this action against plaintiffs in error in the court below, seeking the cancellation of two certain deeds of conveyance to 160 acres of land in Okmulgee county, and the title to which was attempted to be conveyed to plaintiffs in error by one Thomas Tea, a brother of the half-blood of Charley McNac, the Creek allottee of the said tract of land. During the year 1904, Charley McNac, while seised of said premises in fee, died intestate, leaving surviving him his two daughters, Pauline Bailey, *nee* McNac, and Polly Brown, *nee* McNac, defendants in error. The two daughters named were half-blood Creeks. Their mother being a citizen of the Seminole Nation, they were enrolled as citizens of that nation. At the time of the death of Charley McNac, he also left surviving him the said Thomas Tea, a brother of the· half-blood, who was an enrolled citizen of the Creek Nation. The said Thomas Tea, claiming to be the sole heir at law of Charley McNac, by warranty deed, attempted to convey the allotment of said Charley McNac, deceased, to the Hughes Land Company, on or about July 13, 1907, and on October 26, thereafter, by warranty deed, attempted to convey said lands to the Sherman Land Company. The respective deeds were placed of record in the office of the clerk of the United States court, the *ex officio* recorder of deeds at Okmulgee, in the then Indian Territory. Defendants below demurred to the amended petition, because it affirmatively appeared therefrom that plaintiffs below were not citizens of the Creek Nation, and therefore acquired no title to the estate of said Charley McNac. The demurrer being overruled, the case is brought here for review, and the sole question for our consideration is: Did the court err in overruling the demurrer?

The question involves a construction of section 6 of the act of Congress approved June 30, 1902, entitled "An act to ratify and confirm the supplemental agreement with the Creek Tribe of Indians, and for other purposes." 32 U. S. St. at L. p. 500, c. 1323. The amended petition alleged that Charley McNac was a Creek citizen on the full-blood Indian roll, and that his sole

heirs at law were his two daughters, Pauline Bailey, *nee* McNac, and Polly Brown, *nee* McNac, but that though the said daughters were half-blood Creek Indians, by virtue of the citizenship of their mother, they were enrolled as citizens of the Seminole Nation.

The first proviso of section 6, *supra,* reads that only citizens of the Creek Nation, male and female, and their Creek descendants, shall inherit lands of the Creek Nation. Thus two distinct and independent classes are named who may inherit allotted lands of the Creek Nation: (1) Those kinsmen who are citizens of the Creek Nation; and (2) those kinsmen who are Creek descendants of citizens of the Creek Nation.

Under the allegations of the petition, if defendants in error are entitled to recover at all, it is because of the fact that they are descendants of a Creek citizen. That defendants in error are in fact descendants of a citizen of the Creek Nation cannot be denied, but it is said that they are not Creek descendants within the meaning of section 6, heretofore quoted.

The opinion of this court in *Lamb v. Baker,* 27 Okla. 739, 117 Pac. 189, establishes the law of this case. The court, speaking through Hayes, J., in referring to the proviso in question, said:

"The meaning of the first proviso of section 6, standing alone and unaffected by the second proviso, is not susceptible of much doubt or debate. Members or citizens of the Creek Nation may inherit and the Creek descendants of such members —that is, their descendants of Creek blood—may inherit, in the order provided in chapter 49 of Mansf. Dig. [Ind. T. Ann. St. 1899, c. 21]."

Referring to the further proviso, "And provided further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49," the court said:

"And without the last proviso it would have the effect to make the lands of a Creek allottee escheat when there are no kindred of the classes named in the first proviso, although there

be left surviving kindred of the classes named in chapter 49 of Mansf. Dig."

With great clearness and accuracy the court construes said section so as to give effect to each and every part thereof, and concludes that the second proviso was not a limitation upon the first, and says:

"If every part of the first proviso of said section 6 be given meaning according to the plain terms of its language, no such result follows. The second proviso was not introduced, in our opinion, to qualify or restrict the meaning of the first one, but to provide for a line of descent when no heirs of the classes named in the first proviso exist."

So, having determined that the second proviso does not constitute a limitation upon the first, but was intended only to provide for a line of descent when no heirs of the classes named in the first proviso exist, and·it being admitted that the defendants in error are the daughters of the deceased allottee, they are in law his descendants, and, by virtue of his citizenship in the Creek Nation, are Creek descendants, though enrolled as citizens of the Seminole Nation, the word "Creek" having reference to the blood of the father and not the tribal enrollment of the descendants.

And in order that the children of a deceased Creek allottee may be entitled to inherit lands of the Creek Nation, it is not a prerequisite that they be enrolled citizens of the Creek Nation.

We conclude that plaintiffs in error, having purchased from the half-brother of the allottee, acquired no title to the lands in controversy, and that defendants in error succeeded to and inherited the estate of Charley McNac upon his death, and that the trial court committed no error in overruling the demurrer to the amended petition.

The judgment of the trial court should therefore be affirmed.

By the Court: It is so ordered.

All the Justices concur.