# NADAL v. MAY.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.

No. 130.   Submitted December 12, 1913; Restored to docket for reargument January 26, 1914; Reargued April 6, 7, 1914.—Decided April 20, 1914.

The Civil Code of Porto Rico of March 1, 1902, did not go into effect until July 1, 1902, *Ortega* v. *Lara*, 202 U. S. 339, and prior thereto the wife's assent to a conveyance by her husband was not necessary.

Decisions of this court and of the local courts as to the date when a code of law making material changes in the prior existing law went into effect may well become a rule of property which should not be disturbed by subsequent conflicting decisions.

This court, as a general rule, is unwilling to overrule local tribunals upon matters of purely local concern. *Santa Fe Central Ry.* v. *Friday*, 232 U. S. 694.

5 P. R. Fed. Rep. 582, affirmed.

THE facts, which involve the validity of title to land in Porto Rico, and determination of the date when the Civil Code of 1902 went into effect, are stated in the opinion.

*Mr. N. B. K. Pettingill*, with whom *Mr. F. L. Cornwell* was on the brief, for plaintiff in error:

There was error in determining the meaning of the will. The translation of the official interpreter was not conclusive and the construction based thereon is erroneous.

There was error in the admission and exclusion of evi-

dence; as to excluding admission of Sanjurjo; excluding
the statement as to property 'inherited by Altagracia
Nadal; in the admission of the statement as to the liquida-
tion of community property; the last inquiry is not within
the issues nor is it material.

There was error in giving the peremptory charge. The
plaintiff had established a. *prima facie* case and defendant
did not overcome it.   There was error in overruling the
demurrer to the special defense and holding the same suf-
ficient to warrant directing a verdict for defendant.

The allegations were not sufficient to constitute estoppel.

In support of these contentions, see *Adams* v. *Akerlund,*
168 Illinois, 632; *Ambrose* v. *Moore,* 46 Washington, 463;
*Arnett* v. *Reade,* 220 U. S. 311; *Boscio* v. *Registrar,* 14 P. R.
Fed. Rep. 605; *Caballero* v. *Pomales,* 17 P. R. Fed. Rep. 691;
*Caballero* v. *Registrar,* 12 P. R. Fed. Rep. 214; *Crary* v. *Dye,*
208 U. S. 515; *Dooley* v. *Registrar,* 12 P. R. Fed. Rep. 202;
*Feliu* v. *Registrar,* 16 P. R. Fed. Rep. 728; *Fernandez* v.
*Gutierrez,* 10 P. R. Fed. Rep. 59; *Gonzalez* v. *Ortiz,* 17 P. R.
Fed. Rep. 563; *Garrozi* v. *Dastas,* 204 U. S. 64; *Guies* v.
*Lawrence,* 2 La. Ann. 226; *Hanrick* v. *Patrick,* 119 U. S.
156; *Mutual Life Ins. Co.* v. *Phinney,* 178 U. S. 327; *Rod-
riguez* v. *Registrar,* 14 P. R. Fed. Rep. 754; *Royal Ins. Co.*
v. *Martin,* 192 U. S. 149; *Sturm* v. *Boker,* 150 U. S. 312;
*United States* v. *Turner,* 11 How. 663; *Vidal* v. *Registrar,*
12 P. R. Fed. Rep. 198; *Warburton* v. *White,* 176 U. S. 484;
*Wiser* v. *Lawler,* 189 U. S. 260.

While the Supreme Court of Porto Rico in *Buso* v.
*Busó* held that the Revised Civil Code went into effect
July 1, 1902, and that § 1328 of that Code was a new
section inserted therein, which changed the law as it had
previously obtained and first gave to the wife the power,
by withholding her consent, to prevent the alienation of
the real property belonging to the conjugal partnership,
an examination of *Busó* v. *Busó* will show that the Su-
preme Court of Porto Rico did not investigate the ques-

tion for itself as an independent legal proposition, but was merely misled by the recital contained in the certificate of the Secretary of Porto Rico prefixed to the official printed volume of the Codes. See *Morales v. Registrar,* 16 P. R. Fed. Rep. 109, 114. See also § 41, Political Code, that every statute, unless a different time is prescribed therein, takes effect from its passage.

This section is but declaratory of the law as uniformly settled in the absence of any express provision to the contrary. *Matthews v. Zane,* 7 Wheat. 164, 211; *Memphis v. United States,* 97 U. S. 293, 296; *Seven Hickory v. Ellery,* 103 U. S. 423; *Louisville v. Savings Bank,* 104 U. S. 476; *Robertson v. Bradbury,* 132 U. S. 491; *Ortega v. Lara,* 202 U. S. 339.

The Revised Civil Code was approved by the governor of Porto Rico on March 1, 1902, and went into effect on that day as a matter of law.

The validating act of February 24, 1903, was not effectual. It is clearly an attempt at retroactive legislation which is invalid, if applied to the conveyance in question, because it divests the settled rights of property. *Wilkinson v. Leland,* 2 Pet. 661; *Mitchell v. Campbell,* 19 Oregon, 198, 207; *Showk v. Brown,* 61 Pa. St. 320; *Brinton v. Seevers,* 12 Iowa, 389; *Boston F. Co. v. Condit,* 19 N. J. Eq. 394, 399; *Houston & T. C. R. Co. v. Texas,* 170 U. S. 243, 261. See also *Gunn v. Barry,* 15 Wall. 610, 622; *Arnett v. Reade,* 220 U. S. 311, 320.

The meaning of paragraph seven of the will is not doubtful, nor is the doctrine of innocent purchaser applicable.

Division of community property is not necessarily a matter of probate jurisdiction.

As to *Garzot v. Rubio,* 209 U. S. 283, see *Arnett v. Reade,* 220 U. S. 311, and other cases cited *supra.*

*Mr. Felix Frankfurter,* with whom *Mr. Wolcott H. Pitkin, Jr.,* Attorney General of Porto Rico, was on the brief, for defendant in error:

VOL. CCXXXIII—29

The new Civil Code did not go into effect until July 1, 1902, and the controlling conveyance of June 2, 1902, under the then existing Spanish Civil Code was properly made by the husband without the consent of the wife.

The will under which plaintiff claims conveys to him no interest in "Carmen."

As a bona fide purchaser for value ("third person") the People of Porto Rico could rely on the record title and took a clear title, for no defect or cautionary notice appeared in the registry against "Carmen."

Plaintiff's claim involves a preceding liquidation of a community between husband and wife. This is solely a subject-matter for the local probate court and beyond the jurisdiction of the District Court of the United States for Porto Rico.

The exceptions to rulings on evidence are without merit. In support of these contentions, see *Amadeo* v. *Registrar*, 3 P. R. Fed. Rep. 263; *Busó* v. *Busó*, 16 P. R. Fed. Rep. 864; *Castro* v. *Registrar*, 7 P. R. Fed. Rep. 458, 461; *Escalona* v. *Registrar*, 9 P. R. Fed. Rep. 523; *Garrozi* v. *Dastas*, 204 U. S. 64, 78; *Garzot* v. *de Rubio*, 209 U. S. 283; *Morales* v. *Registrar*, 16 P. R. Fed. Rep. 109, 111; *Ortega* v. *Lara*, 202 U. S. 339, 343; *Para* v. *Registrar*, 2 P. R. Fed. Rep. 592; *Riera* v. *Registrar*, 11 P. R. Fed. Rep. 223; *Roca* v. *Banco Territorial*, 6 P. R. Fed. Rep. 339, 351, 353, 355; *Santa Fe Central Ry. Co.* v. *Friday*, 232 U. S. 694.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit by the plaintiff in error to establish his title to one-half interest in a plantation called 'Carmen,' as devisee of his aunt, Altagracia Nadal. It is alleged that the plantation was bought with the separate money of Altagracia Nadal by her husband, after marriage; that she became the owner of one undivided half, subject to

the administration of her husband until the termination of the conjugal partnership, and that this half passed to her devisee at her death. The complaint admits that after the purchase the husband purported to convey the whole plantation to a third person but alleges that the wife did not consent to the conveyance and that therefore her rights remained.

It appears that on May 1, 1901, Altagracia Nadal brought a suit against her husband for an account of her paraphernal property, alleging among other things, that he had recorded in his favor the estate Carmen, acquired by a deed of October 25, 1900, and praying judgment that it was her private property because bought with her separate funds, and for a cautionary notice to be entered in the registry. On November 10, 1901, a settlement was made by which it was stated that the husband had received ten thousand dollars as the product of the wife's paraphernal property, had paid her five thousand dollars and given a mortgage for the other five thousand, and in view thereof she "renounces all the rights and interests which she might have against her husband because of the facts stated in the said complaint." The instrument was presented to the court with a prayer that the court would hold that the parties had desisted from continuing the action and that the cautionary notice be cancelled, which was granted on November 21. There had been conveyances of Carmen, without consideration, it was testified; there was a reconveyance to the husband, and on June 2, 1902, he conveyed it, without his wife's consent, to Elisa Sanjurjo, who on August 29 of the same year conveyed it to the People of Porto Rico, for valuable consideration, there being then no cautionary notice on record. On April 10, 1906, the wife assigned to the plaintiff the mortgage received by her on the above settlement, and on April 27, 1906, made the will under which the plaintiff claims.

By this will the testatrix left to the plaintiff a mortgage

described, with all its rights and actions (*asi como todos sus derechos y acciones*) and also the mortgage assigned on April 10, in case the assignment should not have been effective in favor of her said nephew 'Rafael Martinez y Nadal, *todos los derechos y acciones que puedan caberme en los bienes mios que estén á nombre de mi esposo Isidro Fernandez Sanjurjo, en virtud de la transacción celebrada con mi dicho esposo.*'

The plaintiff's claim is founded on these last words. The official translation accepted by the court reads that she leaves the mortgage "in case the assignment shall not have become effective, all the rights and actions which may pertain to me in my properties which are in the name of my husband Isidro Fernandez Sanjurjo, by virtue of the settlement made with my said husband." The plaintiff contends that the word 'and' should be read in before 'all the rights and actions' on the notion that a *y* has dropped out or should be implied. He argues that the estate Carmen was not embraced in the settlement, because community property in which the wife had and retained a community interest and that the last words devise it—*en virtud de* signifying more nearly in spite of the settlement than by virtue of it.

On the other hand it is argued that the settlement renounced all claim by the wife to Carmen if any she had; that the last words of the will have an import similar to that of those used in connection with the previous mortgage; that *en virtud de* means by virtue of; that if the wife had a claim it was outside the settlement and those words would not describe it, even if at the date of the will the estate had still stood in the husband's name, where notoriously and as she well knew it had not stood for years. The government also claims as a *bona fide* purchaser without notice. It is obvious, we think, from this summary that these arguments against the plaintiff's claim are hard to meet, and they were not met. But it is

not necessary absolutely to decide on their validity as the case is disposed of by a preliminary point.

Both sides agree that the wife's assent to a conveyance by her husband was made necessary for the first time by § 1328 of the Civil Code of March 1, 1902. Unless that Code went into effect at its date it did not apply to the conveyance of June 2. The plaintiff argues with much force that it was in effect then and that the decisions to the contrary are all based on a mistaken certificate of the Secretary of Porto Rico, but we are of opinion that the considerations on the other side must prevail. On the last day of its session the Legislature passed four codes making material changes in the existing law—the Political Code, the Penal Code, the Code of Criminal Procedure and the Civil Code, which although in form separate acts were published in one volume and constituted a large part of a system. Two of these Codes fixed July 1, 1902, as the time for their taking effect. It was the duty of the Secretary to promulgate the laws (Act of Congress of April 12, 1900, c. 191, § 19, 31 Stat. 77, 81), and he was directed by an act of the same date as that of the Codes to revise and arrange the provisions of the Codes for publication along with the Joint Codes Committee of the Legislature; the arrangement to be completed as soon as practicable after April 1, and publication being expected on or before August 1. A resolution of the day before shows that they had to be enacted before enrollment with manuscript corrections. Rev. Stats. & Codes of Porto Rico, 1902, p. 299. The Secretary certified that they were in effect on and after July 1, 1902. But the injustice of making the Civil Code operative before its contents could be known and before the revision contemplated by the law was so manifest that on February 24, 1903, an act was passed purporting to validate all conveyances of real estate and in general all acts that required certification by a notary executed after March 1, 1902, and on or before January 1,

1903, if they would have been valid by the laws in force on February 28, 1902. This court assumed that the Civil Code went into effect on July 1, in *Ortega* v. *Lara*, 202 U. S. 339, 343, and the Supreme Court of Porto Rico has decided the same point twice. *Estate of Morales* v. *The Registrar of Property of Caguas*, 16 P. R. Fed. Rep. 109, 114. *Busó* v. *Busó*, 18 P. R. Fed. Rep. 864, 867, 868. It is impossible to know how many or how important transactions may have taken place on the faith of these repeated solemn assurances, and apart from the general unwillingness of this court to overrule the local tribunals upon matters of purely local concern, *Santa Fe Central Ry. Co.* v. *Friday*, 232 U. S. 694, 700, it is not too much to say that the decisions have become a rule of property, even if we did not think, as we do, that probably the Secretary's certificate expressed the legislative will.

*Judgment affirmed.*