## GREASE v. McNAC et al.

No. 12013—Opinion Filed Jan. 30, 1923.

Rehearing Denied April 15, 1924.

(Syllabus.)

### Indians—Descent of Creek Lands.

G., a duly enrolled member of the Cherokee Tribe of Indians, brought suit against M. and M., her half-brothers, who are duly enrolled members of the Creek Tribe of Indians, and against their grantees, for partition of the lands allotted to the father of G. and M. and M., who was a duly enrolled member of the Creek Tribe of Indians of full-blood, and who died intestate, on January 27, 1905, claiming that she inherited one-third of said lands. Held, that descent was governed by section 6 of the Supplemental Creek Agreement (32 Stat. L. 500), and it is provided in said section "that only citizens of the Creek Nation, made and female, and their Creek descendants shall inherit lands of the Creek Nation." G. took no interest in said lands, as she was not a Creek descendant or a citizen of the Creek

Nation, within the contemplation of said agreement.

Error from District Court, Muskogee County; E. A. Summers, Judge.

Action by Nancy Grease against Austin McNac and others to partition Indian land. Judgment for defendants, and plaintiff appeals. Affirmed.

Dawes & Kyle, for plaintiff in error.

Irwin Donovan, W. B. Moore, Campbell Leahy & Brewster, and O. Benjamin Jefferson, for defendants in error.

NICHOLSON, J. This suit was instituted in the district court of Muskogee county, by the plaintiff in error, as plaintiff, against the defendants in error, as defendants, seeking the partition of certain lands allotted to Dave McNac, deceased.

In her petition the plaintiff alleged, in substance, that she and the defendants Austin McNac and Robert McNac were the children and only children, and as such, sole heirs at law of Dave McNac, deceased, who was a duly enrolled Indian of the Creek Tribe and full blood, his name appearing opposite roll No. 8984; that the lands described were duly allotted to said Dave McNac as his portion of the lands of the Creek Nation, that he died intestate, in what is now Muskogee county, on the 27th day of January, 1905, leaving surviving him his widow, Jeanetta McNac. one of the defendants the plaintiff, and the defendants Austin McNac and Robert McNac as his sole heirs at law; that at the time of the death of said Dave McNac, he was seized and possessed of the title in fee of the lands described, which descended to and vested in the plaintiff and the defendants Austin McNac and Robert McNac, subject to the dower rights of the defendant Jeanetta McNac.

It is further alleged that as one of the three sole heirs at law of Dave McNac, deceased, the plaintiff owns an undivided one-third of said real estate, and that the defendants Austin McNac and Robert McNac each inherited an undivided one-third thereof; that the other defendants claim some interest in said real estate under instruments in the nature of deeds and leases purporting to have been executed by the defendants Austin McNac, Robert McNac, and Jeanetta McNac, and prayed judgment for partition of said lands, and the setting apart to her of her undivided one third thereof subject to the dower rights of the defendant Jeanetta McNac.

Upon motion of the defendants, the court made an order requiring the plaintiff to make her petition more definite and certain, and in compliance with this order, the following amendment was made:

"Plaintiff, Nancy Grease, is enrolled as a member of the Cherokee Tribe of Indians, being one-half Cherokee and one-half Creek, and a Creek descendant of her Creek father, Dave McNac."

To the petition as amended the defendants interposed a demurrer on the ground that said petition failed to state facts sufficient to constitute a cause of action against the defendants. The demurrer was by the court sustained, and judgment rendered dismissing plaintiff's cause of action, and it is this action of the court of which complaint is made.

The only question involved in this appeal is whether the plaintiff, who is enrolled as a member of the Cherokee Tribe of Indians, is entitled to inherit from her father, who was enrolled as a member of the Creek Tribe of Indians, and who died in 1905, at which time descent was governed by section 6 of the Supplemental Creek Agreement, which reads as follows:

"The provisions of the act of Congress approved March 1, 1901 (31 Stat. L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed, and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas now in force in Indian Territory; provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation; And provided, further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49." 32 Stat. 501.

The plaintiff in error urges that the question of law here involved is not a new question but that the same has been repeatedly before this court, and that this court has held in an unbroken line of decisions that a Creek descendant or the descendant of a Creek allottee, although not enrolled on the tribal rolls of the Creek Nation, may inherit the lands allotted to a deceased Creek allottee, and cites Lamb v. Baker, 27 Okla. 739, 117 Pac. 189; Hughes Land Co. v. Bailey, 30 Okla. 194, 120 Pac. 290; Cowokochee v. Chapman, 67 Okla. 263, 171 Pac. 50; Tiger v. Nolan. 78 Okla. 250, 190 Pac. 263; and Minshall v. Berryhill, 83 Okla. 100, 205 Pac. 932, as sustaining her contention.

In Lamb v. Baker. supra, it was held that citizens of the Creek Nation, male and female, and their descendants of Creek blood,

although such descendants be not citizens of the Creek Nation may inherit the allotted lands of a Creek Indian intestate in the manner and order prescribed in chapter 49, Mansfield's Digest of the Statutes of Arkansas, and that the nieces of a deceased Creek allottee inherit the allotted lands of said deceased Creek allottee who died intestate, to the exclusion of the intestate's cousin who was a Creek citizen, although said nieces were not enrolled citizens of the Creek Nation or Tribe of Indians. This case was followed in Hughes Land Co. v. Bailey, supra.

In Cowokochee v. Chapman, the court, basing its opinion upon Lamb v. Baker and Hughes Land Co. v. Bailey, held that the father of a deceased Creek allottee who died intestate and unmarried, without mother or children or their descendants, inherited one-half of the lands allotted to such deceased Creek Indian, although the father was enrolled as a Seminole Indian.

The opinion in Tiger v. Nolan, filed May 4, 1920, cited by plaintiff in error, was withdrawn and the opinion in Tiger v. Nolen, 78 Okla. 250, 190 Pac. 263, was substituted. This opinion does not touch upon the question here under discussion.

In Minshall v. Berryhill, supra, it was contended that Willie Berryhill could not inherit through his father, Samuel Berryhill, because the father died prior to the completion of the final tribal rolls as approved by the Commission to the Five Civilized tribes, and the name of Samuel Berryhill not appearing on the approved rolls, he was not a citizen of the tribe as contemplated by section 6 of the Supplemental Creek Agreement, supra. Samuel Berry was enrolled on the original tribal rolls of the Creek Nation, and was recognized as a member of the Creek Tribe as a citizen thereof, but he died in 1898, at the time which made him ineligible for enrollment upon the final rolls of the Creek Tribe as prepared by the Commission to the Five Civilized Tribes. The lands involved in that action were selected on behalf of the heirs at law of Susanna Berryhill, a daughter of Samuel Berryhill, who was enrolled on the final rolls of the Creek Tribe of Indians as of full-blood. She died on July 26, 1899, leaving surviving her her mother, Louisa Berryhill, Charley Berryhill, a brother, and the plaintiff, Willie Berryhill, a paternal half-brother, who were enrolled on the final rolls of the Creek Tribe of Indians as of full-blood, and the court held that Willie Berryhill, the plaintiff, met every requirement of the Creek Supplemental Treaty, as he was a Creek citizen and a descendant of a Creek citizen. We fail to see wherein this case sustains the contention of the plaintiff in error.

The case at bar hinges upon the proper interpretation of section 6 of the Supplemental Creek Agreement, supra, and the question presented for determination is whether a Cherokee descendant of a Creek citizen is a Creek descendant of a Creek citizen within the meaning of the proviso to said section.

It may aid us in arriving at a proper solution of this question to consider other legislation pertaining to the members of the Five Civilized Tribes. While some preliminary work had been done by the Commission to the Five Civilized Tribes under various acts of Congress, the real beginning of the present approved rolls of such tribes was made under the authority of the act of Congress of June 28, 1898, commonly known as the "Curtis Act" (30 Stat. L. 495). The work done under this act was carried forward to completion under the several treaties and the later acts of Congress, and allotments made under the Curtis Act were confirmed by the Original Creek Agreement (Act of March 1, 1901, 31 Stat. L. 861).

Section 21 of the Curtis Act, after providing for the rolls of citizenship of the several tribes, declared what persons should constitute the several tribes, in the following language:

"The rolls so made, when approved by the Secretary of the Interior, shall be final, and the persons whose names are found thereon, with their descendants thereafter born to them, with such persons as may intermarry according to tribal laws, shall alone constitute the several tribes which they represent."

Under the foregoing provision, it is incumbent upon one claiming to be a member of the tribe—to be a Creek—to show that he is one whose name appears upon the final approved rolls of the tribe, or that he was born since those rolls were made.

By section 1 of the Supplemental Creek Agreement, it is provided that the words "Creeks" and "Muskogee," as used in said agreement, shall be deemed synonymous and the words "nation" and "tribe" shall each be deemed to refer to the Muskogee Nation or Tribe of Indians. The word "citizen" or "citizens" shall be deemed to refer to a member or members of the Muskogee Tribe or Nation of Indians.

The plaintiff brought this suit as a person sui juris, therefore she must have been born before the closing of the final rolls of the Creek Nation, as these rolls were closed

by act of Congress of March 4, 1906 (34 Stat. L. 137) and as her name is not upon the Creek rolls, she is under the foregoing provisions not a Creek; that she is a descendant of a Creek is, for the purpose of testing the sufficiency of the petition, admitted by the demurrer but she is a Cherokee descendant of a Creek citizen, and not a Creek descendant of a citizen of the Creek Nation.

In the cited cases which have touched upon this question, the court does not seem to have given any significance to the word "Creek" preceding the word "descendants" but has construed the words "Creek descendants" to mean their descendants of Creek blood. To our mind, the adjective "Creek" preceding the word "descendant" was placed there for a purpose. Since all descendants of Creek citizens are of the blood of their ancestors, the word "Creek" is superfluous, unless it means something more than Creek blood.

We have no hesitancy in saying that if it were possible for us to do so, we would, with the judicial pen, blot out the word "Creek" preceding the word "descendants" in the first proviso of section 6 of the treaty, and thus make such proviso read: "That only citizens of the Creek Nation, male and female, and their descendants, shall inherit the lands of the Creek Nation." Reading thus this proviso would more nearly accord with our idea of right and justice. But we cannot ignore entirely the word "Creek"; it was placed there by the tribe for a purpose; it means something, and the only meaning we can ascribe to it is that it relates to the political status rather than to the blood.

By section 21 of the Curtis Act, supra, persons whose names are found upon the final rolls with their descendants thereafter born to them, with such persons as may intermarry according to the tribal laws, shall alone constitute the several tribes which they represent. The plaintiff's name was not found upon the tribal rolls of the Creeks, and she was not born after the rolls were closed; therefore she is not a Creek within the contemplation of the treaty and the Curtis Act.

It is a harsh rule which prevents Nancy Grease from inheriting equally with her half brothers, the lands of her father, and one that does not appeal to our sense of justice, but the rule was established by her people, and when viewed from the Indian's standpoint, may not to them seem unjust. It must be remembered that the tribe formerly held all lands in common, and that the Indian was more jealous of his tribal relation than of his family relation; that the interest of the tribe was paramount to the interests of the individual or the family and, bearing this in mind, it is but reasonable to conclude that when the time came that the tribal lands should be partitioned among the individual members of the tribe, they intended to make provision whereby the lands should be kept within the tribe so long as there were members of the tribe to take rather than to permit it to pass to noncitizens.

We conclude that Nancy Grease, not being a Creek descendant of a citizen of the Creek Nation, did not inherit the land involved. This conclusion is consonant with the holdings of the Supreme Court of the United States in Washington v. Miller. 235 U. S. 422, 59 L. Ed. 295, where in construing the provisions in the Supplemental Creek Agreement, it was held that the grantee of a Creek mother was entitled, as against the claims of a Seminole father, to the lands inherited from the child of their marriage enrolled as a Creek, when, if the father had been enrolled as a Creek, he and the mother would have taken the land equally, and in McDougal v. McKay, 237 U. S. 372, 59 L. Ed. 11, where it was decided that the Creek father of a child born of his marriage with a noncitizen mother, inherited the entire estate of the child, which died intestate, without issue, to the exclusion of the mother. although she would have taken equally with him had she been an enrolled Creek.

In Bruner v. Oswald et al., 72 Oklahoma, 178 Pac. 693, it was held that an enrolled Seminole freedman who claimed to be the father of an enrolled Creek freedman, was excluded from an interest in the lands, allotted to such Creek freedman who died March 23, 1902, at the age of 18 months, the final rolls being conclusive as to Creek citizenship. As touching upon the question involved see Campbell v. Wadsworth, 248 U. S. 169, 63 L. Ed. 192.

The cases of Lamb v. Baker, Hughes Land Co. v. Bailey, and Cowokochee v. Chapman, in so far as they are in conflict with the views herein expressed, are hereby overruled.

It follows that the trial court did not err in sustaining the demurrer to the petition. The judgment is affirmed.

JOHNSON, V. C. J., and McNEILL, BRANSON, and HARRISON, JJ., concur. KENNAMER and COCHRAN, JJ., dissent