## COKER et al. v. HOWARD

No. 17052—Opinion Filed Oct. 26, 1926.

(Syllabus.)

1. **Guardian and Ward—Validity of Sale of Undivided Interest of Minors in Land — Ascertainment of Exact Interest of Each Minor not Essential.**
   The validity of a judicial sale through the county court sitting in probate does not de

pend upon the accurate ascertainment of the extent of the interest of the minor or minors in the land sold, where it is alleged that the minors whose estate is in probate have an undivided interest in the real property by inheritance from their deceased father, and an order authorizing the sale of all the right, title, and interest of the minors in and to the real estate is not without the jurisdiction of the court even though it subsequently develops that some of the minors, all of whom are brothers and sisters, did not inherit as a matter of law from their deceased father.

## 2. Same—Validity of Sale of Inherited Creek Allotment Though Including Among Minor Heirs Children Enrolled as Seminoles.

C., a duly enrolled and allotted Indian citizen of the Creek Tribe, died in 1905, intestate, seized of the land so allotted to him as such citizen, leaving surviving him children enrolled as citizens of the Creek Tribe and also children enrolled as citizens of the Seminole Tribe; the children were minors; a petition was filed by their guardian in the probate court alleging that each of the minors owned an undivided interest in the land inherited from their deceased father; an order was entered authorizing the sale of all the right, title, interest, and estate of each of the minors in and to the real property. The land was sold for a fair consideration and the money paid. The sale was duly confirmed. Held, that, although the proviso to section 6 of the Supplemental Creek Agreement of June 30, 1902, precluded the children of the decedent enrolled as Seminole citizens from inheriting an interest in the property along with the children enrolled as Creek citizens, the sale of all the interest of the minors by the guardian in good faith, believing that each inherited an interest in the property, operated to divest the title of the minors who actually owned the property, and the purchaser acquired the full title in the same as against them.

Error from District Court. Hughes County; Geo. C. Crump, Judge.

Action by Cheparney Coker and another against R. H. Howard. Judgment for defendant, and plaintiffs bring error. Affirmed.

Orr & Woodford and Norvell & Haulsee, for plaintiffs in error.

Anglin & Stevenson, for defendant in error.

BRANSON, V. C. J. This cause presents error from the district court of Hughes county. Cheparney Coker and Eliza Coker, plaintiffs in error, sued R. H. Howard, defendant in error. Judgment was for the defendant, and the plaintiffs appeal. The parties are referred to as plaintiffs and defendant. The plaintiffs sued in ejectment for a certain tract of land. The land was allotted to one Lewis Coker, a citizen by blood of the Creek Tribe of Indians. The plaintiffs claim said land by inheritance. The said Lewis Coker died intestate seized of the same in November, 1905. The said Lewis Coker left surviving him Cheparney Coker, Eliza Coker, the plaintiffs as aforesaid, Henry Coker, Daniel Coker, William Coker, and Benjamin Coker, his children. The plaintiffs were enrolled as citizens by blood of the Creek Tribe of Indians. The other children of the said decedent were enrolled citizens by blood of the Seminole Tribe of Indians. The county court of Seminole county appointed one William Coker as guardian of Cheparney Coker, Eliza Coker, and the other of said children of Lewis Coker, deceased. In 1912 the said guardian filed a petition in said court—in probate—describing the land involved in this suit and praying an order to sell the interest of the said minors and each of them in and to said real estate. In said petition the guardian set out, among other things:

"That together said wards owned their deceased father's allotment in the Creek Nation worth about $8,000. * * *"

The county court entered the proper orders; the land was sold to one V. V. Harris; guardian's deed executed in January, 1913; and the said V. V. Harris in turn conveyed the land to one Brinson, who in turn conveyed to the defendant herein.

While there are several questions presented in the brief, if the main question at issue is resolved against the plaintiffs, a discussion of the others is unnecessary.

The main question can be understood by a brief statement. The land is a Creek allotment set aside to the decedent by virtue of the acts of Congress and particularly the Original Creek Agreement of March 1, 1901, 31 Stat. L. 861, and the Supplemental Creek Agreement of June 30, 1902, 32 Stat. L. 500. The children were mixed-blood Creeks and Seminoles. The plaintiffs were enrolled as Creeks and the other children were enrolled as Seminoles. The proviso to section 6 of the Supplemental Creek Agreement is:

"Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation."

It has now become the settled law, after numerous decisions both state and federal, that at the time the descent in the instant case was cast (1905) the inheritance went only to the enrolled citizens of the Creek Tribe, to the exclusion of enrolled citizens of any other tribe. This operated to vest as a matter of law the title by descent to

the land in question in the plaintiffs, to the exclusion of their brothers and sisters, who were on the Seminole Indian roll. At the time of this proceeding in the probate court of Seminole county in 1912, the question was not only subject to debate among members of the bar, but subject to considerable confusion in the courts as to whether or not under such a situation the said proviso to section 6 of the Supplemental Creek Agreement intended to preclude the children of a deceased Creek Indian from inheriting although the children were enrolled as Seminoles. Under this condition the guardian of all the children in the probate court having jurisdiction of the estate secured an order for the sale of the land as the land of all the minors. Certainly this sale would have operated to divest the title of the minors and fixed it in the grantee in the guardian's deed had all the children been enrolled as Creek citizens. But the contention here is that, since the law was that the plaintiffs were the owners of the entire estate, the sale thereof as the property of not only the plaintiffs but of the brothers and sisters was the sale of land belonging to plaintiffs for the benefit of persons who had no interest in the property, and therefore the same and all orders in connection therewith were void on the face of the record. In support of this contention the plaintiffs cite the case of Gaines v. Montgomery, 82 Okla. 275. 200 Pac. 219, and Burris v. Straughn, 107 Okla. 299, 232 Pac. 394. In the former case it is stated:

"A guardian filed a petition for the sale of lands. as the guardian of three wards, naming them, asking the court for an order to sell the lands of one of the wards, upon the grounds that it is necessary to sell same to pay the debts contracted for said wards by a former guardian, * * * and upon the hearing of said petition the county court ordered the sale of the lands of one of the wards for the purpose of paying the debts of all the wards, and this is shown upon the face of the order. Held, the county courts of this state have not the power to make such an order and said order is void. * * *"

In the last-named case, among other things, the law is stated to be:

"In a guardian's sale of the lands of a ward, where the separate lands of several minors are attempted to be sold in one proceeding, if it appears from the face of the record that the lands of the several wards were sold in one parcel and for a lump sum and in such manner that it was impossible to ascertain what the interest of each minor brought, and resulted in the lands of one minor being sold for the use and benefit of the other minors, the order confirming the sale so made would be in excess of jurisdiction and void."

We think that this last case and the reasoning thereof does not control the question at issue herein, for in that case it appeared that the minors owned severally different tracts of land, and the wrong was not that they were sold in the same proceeding, but that they were sold in such manner that the amount each brought was not determinable.

In the first-named case a similar condition existed; the minors owned different tracts of land. The court directed that a tract belonging to a particular minor be sold for the purpose of paying the debts of all the minors. While the reasoning in these cases is confusing on the question here involved, we find in neither of them that the minors owned or claimed to own or were thought to own an undivided interest in the tract or tracts of land offered for sale. While we think it is well settled in this jurisdiction that where the estate of several minors is in one probate proceeding and each minor owns land separate and distinct from each of the other minors, the guardian cannot, under the statutes, sell the land of one minor for the benefit of the other minors; neither can he sell the different tracts owned by different minors in such a manner as it cannot be determined what the tract belonging to each minor brought. But that is not the question in the instant case. In the instant case, as pointed out above, each of the minors was an heir at law of their deceased father, Lewis Coker. Ordinarily they would have inherited share and share alike all of his estate of which he died seized. Ordinarily a sale such as here of the undivided interest of each minor in the land would never have been questioned. In fact, it would not have been subject to question had it not been determined by cases, most of which have been adjudicated since this probate proceeding (and the law as to which was not settled at the time of the probate sale), that by reason of the proviso of section 6 of the Supplemental Creek Treaty the children enrolled as Seminoles could not participate by inheritance in the land allotted to their Creek father.

The Seminole Tribe of Indians had a proviso in the Act of Congress of June 2, 1900 (31 St. L. 250). Subdivision 2 thereof is:

"If any member of the Seminole Tribe of Indians shall die after the thirty-first day of December, 1899, the lands, money and other property to which he would be entitled if living shall descend to his heirs who are Seminole citizens. * * *"

The intent and purpose of this provision as to Seminole properties was none other than the said intent and purpose of the said proviso to section 6 of the Supplemental Creek Agreement in so far as pertinent here, and this court as late as 1916, by unanimous opinion, held that the chi.dren of a deceased Seminole who had been placed on the final rolls of the Creek Tribe of Indians were entitled to take land in the Seminole Tribe, and the law as to the Seminole Treaty did not become settled until the Supreme Court of the United States in the case of Campbell v. Wadsworth, 63 L. Ed. 192, reversed the Supreme Court of this state and held that the Creek children were not entitled to inherit from their Seminole father. This did not occur until the latter part of 1918. The full scope and meaning of the said proviso to the Supplemental Creek Agreement was in dispute and not fully comprehended even by this court as late as 1924. The interpretation placed thereon in the case of Harris v. Grayson, 90 Okla. 147, 216 Pac. 446, was reversed by the Supreme Court of the United States in an opin'on reported in 267 U. S. 352, 69 L. Ed. 655.

There was nothing, therefore, in the conduct of the guardian in the instant case from which any inference of intended fraud either upon the court or upon the wards can be drawn.

We are then face to face with the proposition as to whether or not the sale of all the right, title, and interest of the p'aintiffs by their guardian in and to the inherited land of their father without the said interest be'ng determined operated to convey the entire estate. On s'milar questions this court has several times spoken. In the case of Littlehead v. Mount. 99 Okla. 225, 227 Pac. 98, it was said:

"A probate sale of the real estate of a minor does not depend for its validity upon a judicial determination of the amount of the interest owned by such minor in the lands sold, and a sale of all right, title, and interest is a sufficient description to uphold the sale. A probate court has power to order a sale of an interest in the land owned by a minor described as all right, title, and interest therein, at private sale, and has power to order a sale of such interest in several allotments in one proceeding."

Further, it is stated by this court:

"The true rule seems to be, that a judicial sale does not depend for its validity upon a judicial ascertainment of the nature and extent of the interest in the land sold, and that a sale of all right, title, and interest is a sufficient description to uphold the sale. Treptow v. Henry Buse et al., 10 Kan.

170; Strawn v. Grady. 84 Okla. 66, 202 Pac. 505; Meyer v. Farquharson et al. 46 Cal. 190. Neither has any case been cited in support of the proposition that a probate court has not power to order a sale on an interest in land described as 'all right, title, and interest' at private sale."

Again, in the case of Holmes v. Coe, 113 Okla. 12, 237 Pac. 441, this court reiterated the principle above announced to the effect that the validity of a probate sale of a minor does not require a determination of the amount of interest owned by such minor in the land sold. These conclusions are supported in reason by the following cases: Atkinson v. King, 93 Okla. 37, 219 Pac. 914; Scott v. Abraham, 60 Okla. 10, 159 Pac. 270; Landrum v. Ross, 113 Okla. 275, 240 Pac. 1060.

It is vigorously insisted by the plaintiffs that this case must turn upon the allegation in the petition for sale of the land in the probate court which set out in effect that it was for the benefit of all the minors. and that this constituted the sale of the property of the plaintiffs for the benefit of those who had no interest therein. It is now conceded to be the settled law that the plaintiffs inherited the land in question. Had the petition recited that the sale was merely of the interest of the plaintiffs and the other minors had been omitted therefrom, and that it was for the purpose of paying their debts or for their support, maintenance, and education, no one questions but that the court would have acquired jurisdiction to make the order of sale and to confirm the sale, although one of the minors might not have needed any money for his support, maintenance, and education, neither might one of the minors have been obligated to pay any debts and none of the money might have been used for his benefit, and yet this would not have affected the power or jurisdiction of the court to enter the orders. Under such a state of facts the question of the use of the money arising from the land might invoke a remedy to hold the guardian responsible for the proper, legitimate, and legal use of the moneys, but would, as we view it, not strike down the validity of the sale of the property where there was no circumstance existing which could give rise to the inference of fraudulent conduct on the part of either the guardian or the court.

The judgment of the trial court is affirmed.

NICHOLSON, C. J., and MASON. HARRISON. PHELPS, HUNT, CLARK, and RILEY, JJ.,concur.

Note.—See under (1) 28 C. J. p. 1175, §297

(Anno); p. 1178, §305 (Anno); p. 1181, §310 (Anno). (2) 28 C. J. p. 1194, §340 (Anno); 31 C. J. p. 523, §96.