## KNIGHT et al. v. CARTER OIL CO.

Circuit Court of Appeals, Eighth Circuit.
December 17, 1927.

No. 7639.

**1. Indians ⬥18—Deceased Creek allottee's sister and niece belonging to Seminole Tribe did not inherit Creek lands to exclusion of Creek grandchildren of allottee's aunt (Supplemental Creek Agreement, § 6; Act March 1, 1901 [31 Stat. 861]; Mansf. Dig. Ark. §§ 2522–2545).**

Under Supplemental Creek Agreement, § 6 (32 Stat. 501), repealing provisions of Act March 1, 1901 (31 Stat. 861), providing for descent and distribution according to laws of Creek Nation, and providing that such descent and distribution should be in accordance with Mansf. Dig. Ark. §§ 2522–2545, a sister and niece of Creek allottee who were members of the Seminole Tribe did not inherit Creek lands to exclusion of grandchildren of allottee's aunt belonging to Creek Nation.

**2. Courts ⬥93(1), 367(1)—Courts are disposed to adopt construction which has become rule of property and unwilling to overrule local tribunals on matters of local concern.**

Where construction of law has become a rule of property, courts are disposed to adopt it as such, even if that construction is doubted, and are as a general rule unwilling to overrule local tribunals on matters of purely local concern.

**3. Courts ⬥93(1)—Whether courts will adopt construction which has become rule of property depends largely on circumstances of case.**

Application of rule whereby courts are disposed to adopt construction which has become rule of property is not without exception, and depends largely on circumstances of case under consideration.

**4. Courts ⬥365(3)—Federal Supreme Court is court of last resort in construing federal law.**

The Supreme Court of the United States is the court of last resort in the construction of federal law.

**5. Courts ⬥367(2)—State court decisions, later overruled in accordance with federal holdings, will not be adhered to as establishing rule of property (Supplemental Creek Agreement [32 Stat. 500]).**

Where state court decisions relative to inheritance under the Supplemental Creek agreement (32 Stat. 500) had not been in complete harmony, and original decisions were positively and repeatedly overruled in accordance with United States Supreme Court rulings, earlier decisions of state court on such federal law will not be adhered to as establishing a rule of property.

**6. Indians ⬥18—County court's determination of heirship of Creek Indian held not conclusive as to inheritance under Supplemental Creek Agreement (25 USCA § 375).**

Determination as to heirship of Creek Indians by county court pursuant to application under 25 USCA § 375 (Comp. St. § 4234a),

23 F.(2d)—31

*held* not conclusive on matter of inheritance under Supplemental Creek Agreement (32 Stat. 500).

Appeal from the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Suit by the Carter Oil Company against Louis Scott and others. Decree for plaintiff (12 F.[2d] 780), and certain defendants appeal. Reversed and remanded.

G. R. Horner, of Okmulgee, Okl., for appellants Scott heirs.

Lafayette Walker, of Okmulgee, Okl., for appellants Tiger claimants.

J. S. Severson, of Tulsa, Okl., Stone, Moon & Stewart and Disney & Wheeler, all of Muskogee, Okl., and R. W. Stoutz, of Tulsa, Okl., for appellants Anderson heirs, Gambrill, Cornelius, and Mengo.

C. M. Oakes and L. G. Owen, both of Tulsa, Okl. (James A. Veasey and Walter Davison, both of Tulsa, Okl., on the brief), for appellee.

Before VAN VALKENBURGH, Circuit Judge, and REEVES and OTIS, District Judges.

VAN VALKENBURGH, Circuit Judge. Appellee, the Carter Oil Company, originally brought suit against a number of the appellants, named as defendants, and by the court below designated as the Scott heirs, claiming to be the owner of an oil and gas lease on the allotment of Louisa Fulsom, a Creek Indian, now deceased, praying that its title be established and that the claims of defendants be removed and set aside as a cloud upon that title and for other equitable relief. From time to time the other parties, now appearing as appellants, were made defendants or came into the case by intervention. These numerous defendants were by the trial court divided into groups, and their various claims were considered under such group designations.

The allottee, Louisa Fulsom, died in June, 1904. At that time the Act of Congress approved June 30, 1902 (32 Stat. 500), commonly known as the Supplemental Creek Agreement, was in force. Section 6 of said act reads as follows:

"The provisions of the Act of Congress approved March 1, 1901 (31 Stat. L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Stat-

utes of Arkansas now in force in Indian Territory: Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation: and provided further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter."

Louisa Fulsom was a Creek Indian, the daughter of Co-wok-o-chee, a member of the Creek Tribe, and Hoktee, a member of the Seminole Tribe. She had no children. At her death she was survived by a sister, Jemima Fulsom, a citizen of the Seminole Tribe. Jemima died a short time after Louisa, leaving a daughter, Lena Edwards, who was also a Seminole citizen.

There are involved in this case the Carter Oil Company, appellee and complainant in the court below; a group known as the Scott heirs; another group called the Anderson heirs, which group includes appellant Ira E. Cornelius; a third group known as the Tiger heirs, and appellants Elizabeth Gambrill and Beaulah Mengo, claiming as descendants of an alleged sister and brother of the allottee. A detailed description of the claims of all the individual appellants, and the relationships through which their titles are alleged to be deraigned, would be impracticable within reasonable limits. The court found that the Anderson heirs based their alleged title upon the claim that the allottee, Louisa Fulsom, had a sister by the name of Betsy, who died subsequently to the death of the allottee, and who was enrolled as a member of the Creek Tribe, and found further that the evidence establishes conclusively that the father and mother of Louisa had no children by the name of Betsy. It also finds that Elizabeth Gambrill and Beaulah Mengo derived their alleged title from Betsy Fife and Stephen Fife, claimed to be the sister and brother, respectively, of Louisa Fulsom, but that the father of Betsy Fife and Stephen Fife, beyond all question, was not the man of the same name who was the father of Louisa Fulsom. It found further that, under the applicable section (2531 of Mansfield's Digest), the allotted estate came to Louisa Fulsom through her father, and that where, as in this case, the intestate decedent dies without descendants, the estate coming from the father ascends to the father and his heirs to the exclusion of the mother and her heirs. The Tiger group, claiming the estate as descendants of a sister of allottee's mother, who was a Seminole, cannot, there-

fore, inherit. We think these findings of fact and conclusions of law are fully sustained by the record. "Thus," as said by the trial court, "the controversy is narrowed down to the plaintiff's claim and the claim of the Scott heirs."

The plaintiff, appellee here, claims through two chains of title—one through Jemima, the sister of the allottee, and her daughter Lena, both Jemima and Lena being enrolled as Seminoles; the other from alleged heirs of a brother of Co-wok-o-chee, the father of allottee. The Scott heirs claim as grandchildren of a sister of the father of the allottee. The court, upon its construction of section 6 of the Supplemental Creek Agreement of June 30, 1902, quoted above, found in favor of appellee upon said first claim of title. It made no finding upon the second.

The sister and niece of Louisa Fulsom, through whom appellee claims, is, of course, nearer in blood relationship to the allottee than are the grandchildren of the sister of allottee's father. However, the latter are Creek descendants of Creek citizens, and themselves Creek citizens, while the former were Seminoles.

Whether noncitizen heirs can inherit Creek lands as against heirs of Creek citizenship, even though of lesser degree of consanguinity, has been the subject of conflicting decision by the Supreme Court of Oklahoma. The original holdings, as in Lamb v. Baker, 27 Okl. 739, 117 P. 189, and Hughes Land Co. v. Bailey, 30 Okl. 194, 120 P. 290, both decided in 1911, and Ross v. Wertz, 70 Okl. 56, 172 P. 968, were to the effect that such noncitizen heirs could inherit if they had the necessary blood relationship, although not members of the Creek Nation. The last of these opinions was rendered in 1918; since that time the Supreme Court of Oklahoma has reversed these former decisions, holding that only Creek citizens and descendants who were Creeks could inherit while that Supplemental Agreement was in force. Grease v. McNac, 102 Okl. 44, 225 P. 524, opinion filed January 30, 1923, rehearing denied April 15, 1924; In re Estate of Yarhola, 99 Okl. 20, 225 P. 543, opinion filed April 15, 1924; Coker v. Howard, 122 Okl. 12, 250 P. 130, opinion filed October 26, 1926.

These later decisions are fully in accord with the rule announced in Washington v. Miller, 235 U. S. 422, 35 S. Ct. 119, 59 L. Ed. 295; McDougal v. McKay, 237 U. S. 372, 35 S. Ct. 605, 59 L. Ed. 1001; Campbell v. Wadsworth, 248 U. S. 169, 174, 175, 39 S. Ct. 63, 63 L. Ed. 192; and Grayson

v. Harris, 267 U. S. 352, 356, 357, 45 S. Ct. 317, 69 L. Ed. 652.

Washington v. Miller was decided November 5, 1914. It held that the special provisos in section 6 of the Act of June 30, 1902 confined the descent and distribution of Creek lands to citizens of the Creek Nation, where there were Creek citizen heirs to take the inheritance. This defines and clarifies the words "Creek descendants," if such clarification be deemed necessary. The term "Creek" qualifies and limits the descendants who are permitted to inherit. It does not qualify the ancestor. If it had been intended that descendants having Creek blood, derived from Creek ancestors, might inherit without regard to the citizenship of such descendants, the qualifying term is left without significance. This view is confirmed by the use of the words "Creek citizenship" in the second proviso.

McDougal v. McKay, decided April 26, 1915, is to the same effect. Campbell v. Wadsworth was decided December 16, 1918. The case came on error to the Supreme Court of Oklahoma. That court, in Wadsworth et al. v. Crump et al., 53 Okl. 728, 157 P. 713, had held that daughters of a deceased Seminole Indian, enrolled as Creeks, inherited lands of the father to the exclusion of more distant relatives enrolled as Seminoles. The law then in force provided that, "if any member of the Seminole Tribe of Indians shall die after the thirty-first day of December, eighteen hundred and ninety-nine, the lands, money, and other property to which he would be entitled if living, shall descend to his heirs who are Seminole citizens." In reversing the judgment of the Oklahoma court, the Supreme Court used language which defines and executes the aim and purpose of these restrictive statutes and refutes the reasoning upon which the courts of Oklahoma had reached a contrary decision. The analogous Supplemental Creek Agreement was quoted and considered and the rulings in Washington v. Miller and McDougal v. McKay were approved. The court, speaking through Mr. Justice Clark, said:

"The Supreme Court [of Oklahoma] also says that only 'the most powerful and impelling reasons' could induce it to hold that it was the intention of the Indians to exclude their own children from participation in the distribution of their property after death. While it is true that it seems unnatural for the Indians to have preferred more distant relatives to their own children in providing for the descent and distribution of their property, yet from the terms of the act before us, and also from the provisions of the Supplemental Creek Agreement that 'only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation' (32 Stat. 500), it is clear that with the Indians the interests of the tribe were paramount to those of the family and it was with a knowledge of the mode of life of their primitive people, better and more intimate than the courts can now command, that they determined that this paramount purpose would best be served by giving to children born of mixed marriages the tribal status of their mother. * * *

"All statutes of descent and distribution are arbitrary expressions of the purpose of the lawmaking power; and that the provisions of such a statute do not happen to meet the notions of justice of a court is not sufficient reason for indulging in an interpretation which modifies their plain and unambiguous terms. Especially is this true of these Indian statutes which are a progressive development, embodying concessions to tribal custom and tradition necessary to be made in order to accomplish a practical, though perhaps not an ideal, dissolution of the tribal relation and distribution of the tribal property."

In Grayson v. Harris, 267 U. S. 352–357, 45 S. Ct. 317, 319 (69 L. Ed. 652), Mr. Justice Sutherland, speaking to the same point, said:

"The lands of the Creek Nation were tribal lands, and the evident purpose of the Indians was to continue at least a semblance of that status so far as it could be done consistently with their distribution in severalty. With the wisdom of that purpose we have nothing to do. It is enough that Congress respected it and gave to it the sanction of law."

[1] Our conclusion is that the trial court was in error in its construction of the Supplemental Creek Agreement, and that Jemima, sister of the allottee, and her daughter Lena, both Seminoles, could not inherit the Creek lands of the deceased Creek Indian, Louisa Fulsom.

[2, 3] But appellee urges that, even though we think the rule announced by the later Oklahoma cases is the sounder one, nevertheless the earlier holding was so long in effect that it should be regarded and protected as a rule of property, citing 15 Corpus Juris, 949; Truskett v. Closser, 236 U. S. 223–229, 35 S. Ct. 385, 59 L. Ed. 549; Nadal v. May, 233 U. S. 447, 34 S. Ct. 611, 58 L. Ed. 1040; Calhoun Gold Mining Co. v. Ajax Gold Mining Co., 182 U. S. 499–505, 21 S. Ct. 885,

45 L. Ed. 1200; and Reynolds v. Fewell, 236 U. S. 58, 35 S. Ct. 230, 59 L. Ed. 465. It is true that, where construction has become a rule of property, courts are disposed to adopt it as such even if that construction is doubted, and are, as a general rule, unwilling to overrule local tribunals upon matters of purely local concern. However, the application of this rule is not without exception and depends largely upon the circumstances of the case under consideration. The opinion in Reynolds v. Fewell, supra, directs its language to a controversy arising under the original Creek laws before the enactment of the Supplemental Creek Agreement. In this connection, however, the court strongly intimated that that Agreement directed the descent as ruled in the later Oklahoma cases.

In Calhoun Gold Mining Co. v. Ajax Gold Mining Co., supra, the Supreme Court of the United States declined to accept the earlier decisions of the Supreme Court of Colorado, which had been later overruled. Mr. Justice McKenna said:

"What consideration should have been given to prior cases, the Supreme Court of the state was better able to judge than we are. It may be that the repose of titles in the state was best effected by the reversal of the prior cases."

[4, 5] It is conceded that apart from any consideration of the rule of stare decisis, which is invoked, the Supreme Court of the United States is the court of last resort in the construction of this federal law. Appellee claims, however, that, inasmuch as the act in question has an exclusively local application and affects titles in Oklahoma alone, the Supreme Court of Oklahoma should be given larger consideration, especially since appellee pleads that it invested in reliance upon the construction placed upon the act in Lamb v. Baker, supra. We are, however, of opinion that the doctrine of stare decisis cannot successfully be urged in the case under consideration. Appellee acquired its title in 1922. As we have seen, the decisions of the Supreme Court of the United States, which should have placed it on its guard, were rendered in 1914, 1915, and 1918, the first only three years after the pronouncement in Lamb v. Baker and Hughes Land Co. v. Bailey. Meanwhile, a number of warnings are to be found from the Supreme Court of Oklahoma itself. In Wadsworth et al. v. Crump et al., 53 Okl. 728, 735, 157 P. 713, that court based its decision upon the reasoning in Lamb v. Baker and Hughes Land Co. v. Bailey in construing this very provision of the Supplemental Agreement. That case

was decided in 1916, and was reversed by the Supreme Court of the United States in Campbell v. Wadsworth, supra, upon the point now in issue. In Cowokochee v. Chapman, 90 Okl. 121, 215 P. 759, the Oklahoma court declared itself bound by the decision of the Supreme Court in Washington v. Miller. And in Bruner v. Oswald, 72 Okl. 42, 178 P. 693, decided in 1919, the Supreme Court of Oklahoma referred to the decision in Campbell v. Wadsworth, and said that the plaintiff in that case could not inherit "he not being a Creek citizen, the inheritance being limited to Creek citizens, or their Creek descendants, and, in default of either, then to noncitizen heirs." It appears, therefore, that there has not been complete harmony as to the rule announced by the Supreme Court of Oklahoma. The former decisions have now been positively and repeatedly overruled. These later cases are in accord with all the holdings of the Supreme Court of the United States from 1915 down to the present time. We do not think the situation presented is one in which the earlier decisions of a state court upon a federal statute should be adhered to as establishing a rule of property.

Furthermore, appellee itself, from the record, discloses doubt as to the validity of its first claim of title, in that, practically contemporaneously with its acquisition of that title from the grantees of the Seminole heirs of the allottee, it also acquired title from heirs of the alleged brother of the father of the allottee, who were, or claimed to be, Creek descendants and Creek citizens. There can be little doubt that it was aware of the conflict of opinion and decision on this point and of the litigation then pending in Grease v. McNac, supra, which culminated in a decision in 1923. For the foregoing reasons, we think the decree should be reversed.

[6] Two other points remain for consideration. One is that appellee made application to the county court under the act of 1918 (U. S. Ann. Supp. 1919, § 4234a [25 USCA § 375]) to determine the heirs of the allottee, and the decision of the county court was in favor of the sister and niece from whom appellee's first title is deraigned. Question is raised as to whether the procedure in that case was the one authorized by statute. However that may be, we do not believe the determination as to heirship under the laws of Oklahoma is conclusive of the matter of inheritance under the Supplemental Creek Agreement. In Coker v. Howard, 122 Okl. 12, 250 P. 130, the county court adjudicated the question of heirship, and the property

was sold pursuant to its decree. The Supreme Court held that the sale passed title, although under the Supplemental Creek Agreement the children of descendants enrolled as Seminole citizens were precluded from inheriting an interest in the property along with the children enrolled as Creek citizens. This adjudication of heirship by the county court cannot aid appellee. But counsel for the oil company urge that, if its first title be rejected, the case be remanded for decision upon its second title. Upon this title the court made no finding in view of its ruling upon the first. The testimony respecting this latter title is meager. It is simply referred to in appellee's brief, and is not discussed in any of the other briefs. Enough appears, however, to indicate that a justiciable point is presented. If it should be established that Co-wok-o-chee had brothers with descendants, they would seem to inherit in the same degree as the descendants of his sister, under whom the Scott heirs claim. At least this is a matter for further investigation.

Our judgment is that the case should be reversed and remanded for further proceedings in accordance with the views herein expressed. It is so ordered.