### BROWN v. PRIVETTE et al.

No. 11768—Opinion Filed March 10, 1925.

**1. Appeal and Error—Review of Evidence in Equity Case.**

In a case of purely equitable cognizance, this court will weigh the evidence produced in the trial court on appeal, and if it finds that the judgment of the trial court is not clearly against the weight of the evidence, it will not disturb said judgment.

**2. Exchange of Property — Rescission — Mistake of Law.**

A mere mistake of law, not accompanied by other circumstances demanding equitable relief, constitutes no ground for a rescission of a contract for exchange of lands based on such mistake.

**3. Adverse Possession—Necessity for Hostile Possession—Grantor's Possession After Delivery of Deed.**

By the execution and delivery of a deed in general terms, the entire legal interest in the premises vests in the grantee, and if the grantor continues in possession afterward, his possession will be that either of tenant or trustee of the grantee. He will be regarded as holding the premises in subserviency to the grantee and nothing short of an explicit disclaimer of such a relation and a notorious assertion of right in himself will be sufficient to change the character of his possession. In such case, the grantor is not deemed, in law to have adverse possession against his grantee, or those deriving title from him.

**4. Contracts — Rescission of Contracts —Prompt Action.**

Where a party has grounds for rescission under our statute he must act promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind.

**5. Judgment—Scope of Relief—Effect of Prayer.**

The demand of the plaintiff in his petition does not necessarily limit the court in the judgment which it may render. It is the case made by the pleadings and the facts proven, and not the prayer of the pleader, which measure the relief that the court may award.

**6. Equity—Prayer—Scope of Relief.**

Under the equity practice, a mistake in the demand for special relief does not preclude the court from granting the proper relief under the general prayer.

**7. Action—Sufficiency of Petition — Prayer for Wrong Relief.**

Under the Code of Civil Procedure in force in this state, a plaintiff is required to set forth the facts constituting a cause of action, and if he state facts showing that he is entitled to a remedy, either legal or equitable, his action will not be dismissed because he has misconceived the nature of his remedial rights and has asked for equitable relief when he should have asked for a legal remedy, or asked for the wrong equitable relief, or vice versa.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; Owen Owen, Judge.

Action by M. A. Brown against W. E. Privette et al., to rescind a contract for the exchange of lands and to cancel deeds and an oil and gas lease and for an accounting for oil and gas production and for judgment for royalties. Judgment for defendants, and plaintiff appeals. Modified and affirmed.

John Caruthers and H. B. Martin, for plaintiff in error.

N. A. Gibson, J. L. Hull, and T. L. Gibson, for defendants in error Harry H. Bell, E. C. Bothwell, D. N. Fink, Trustee for George Barnes, Madge M. Barnes, and Mary C. Secor.

Opinion by THOMPSON, C. This action was commenced on February 24, 1914, in the district court of Tulsa county, Okla., by

M. A. Brown, plaintiff in error, as plaintiff, against W. E. Privette et al., defendants in error, defendants below, to rescind a contract for the exchange of lands and to cancel conveyances of an oil and gas lease, and for an accounting from oil and gas production, and for judgment for royalties.

Parties will be referred to as plaintiff and defendants, as they appeared in the lower court.

The third amended petition of plaintiff, filed April 15, 1918, among other things, alleges that she was the owner and in possession of the southwest quarter of section 4, township 16 north, range 13 east, in Tulsa county, Okla.; that on or about the 9th day of September in the year of 1911, the defendant W. E. Privette represented to plaintiff that he was the owner in fee simple of the following described real estate, to wit: The north half of the southeast quarter and the southeast quarter of the southeast quarter and the southeast quarter of the northeast quarter of section 16, township 15 north, range 13 east, in Okmulgee county, Okla. That on the 9th day of September, 1911, the parties exchanged lands, she taking a general warranty deed to the Okmulgee county land from the defendant Privette, and executing a quitclaim deed to said defendant to her Tulsa county land, the defendant paying the plaintiff the sum of $1,250 difference in value of the two pieces of land. (The deeds are attached as exhibits to the petition and made a part thereof.) That the land in Okmulgee county was the allotment of Charley McNac, a duly enrolled citizen of the Creek Nation. who died sometime in the year 1904, and that defendant Privette's title to said land was obtained by deed from Pauline Bailey, nee McNac, and Polly Brown, nee McNac. children of the said Charley McNac, who were duly enrolled citizens of the Seminole Nation of Indians; that she was induced to exchange her property in Tulsa county for the Okmulgee county land through fraud and deceit practiced upon her by the said defendant; that she could neither read nor write, was not versed in the ways of business, and that, because of her reliance and confidence in the defendant Privette, who represented that he had good title to the Okmulgee county land by his deed from Pauline Bailey and Polley Brown, she was induced to make said exchange; that the defendant Privette agreed to place her in possession of the Okmulgee county land on the first day of January, 1912, which he failed to do, claiming that his tenant had a contract for another year, and the said defendant paid her $150 and allowed her to remain in possession of the Tulsa county land for the year 1912, agreeing to place her in possession of the Okmulgee county land on January 1, 1913; that the first knowledge she had that the defendant Privette did not have good title to the land was when suit was brought against her and Privette in the Okmulgee county district court by the heirs of Pauline Bailey and Polly Brown to set his deed aside and for title and possession to said land; that she was induced to defend said action by defendant Privette; that on January 27, 1913, she gave notice of her rescission of the transaction by filing an affidavit in the office of the register of deeds of Tulsa county; that she had, at all times, remained in possession of the Tulsa county land, claiming the right thereto after she learned of the failure of title; that the defendant Privette sold the land to Harry H. Bell and E. C. Bothwell on the 5th day of October, 1912, who, in turn, on the 20th day of May. 1913, conveyed the same to Alice Y. Barnes; that on the 22nd day of May, 1912, defendant executed an oil and gas mining lease to the Prairie Oil & Gas Company, which entered upon said land and drilled the same for oil and gas and has taken valuable quantities of oil from the land, in violation of the plaintiff's rights; that she, at all times, has given notice of her claim of title to the land and her intention to rescind; that other defendants claim some right, title, or interest in the land, the exact nature of which is unknown to plaintiff. In a supplemental petition, filed November 4, 1919, the date of trial, it is alleged that the sole and only heirs of Charley McNac, at the time of his death, were Thomas Atkins and Thomas Tea, his half-brothers, and Mahala Colbert, his half-sister, all of whom were duly enrolled citizens of the Creek Nation, and that, under the laws in force at the time of his death, his children, enrolled as citizens of the Seminole Nation, could not inherit from their Creek father his allotment as a citizen of the Creek Nation, and that, therefore, the defendant Privette never, at any time, had any right, title, or interest in and to said property; that on the 10th day of May. 1919, George C. Beidleman obtained a deed to the Okmulgee county land from Thomas Atkins and the heirs of Thomas Tea and Mahala Colbert, who are the sole and only heirs of Charley McNac, deceased, which deed was approved by the county court of Okmulgee county, the court having jurisdiction of the settlement of the

estate of Charley McNac, deceased, and copies of said deed and order of approval were attached to and made a part of the plaintiff's petition; that the offers to pay back all moneys due defendants and quitclaim the Okmulgee county land. Plaintiff prays the cancellation of all the deeds and leases and the oil and gas mining leases and an accounting for all oil taken out from under said land and judgment therefor and that the title to said land be declared in her and cloud removed therefrom.

The defendant Privette filed his answer by way of general denial, but admitting plaintiff's title on the day of exchange of land and the execution of a general warranty deed by him of the Okmulgee county land, and the receipt of the quitclaim deed from the plaintiff to the Tulsa county land, and specially denying any fraudulent representation as to the title to the Okmulgee county land, and denying that his title had failed or that he had failed to put plaintiff in possession.

The other defendants filed separate answers, claiming to be innocent purchasers in good faith for value without notice of any defects in the title to the Tulsa county land and without any notice of any claim or interest of the plaintiff. M. A. Brown, to the Tulsa county land, and the defendants Mary B. Secor and D. N. Fink, as trustees of George W. Barnes, filed their cross-petition for rents for the years 1914 to 1919, inclusive, in the sum of $400 per year, or a total of $2,400.

The plaintiff replied to all of the answers by way of general denial.

The cause was dismissed as to the Prairie Oil & Gas Company.

Upon these issues the cause was heard by the court and resulted in a judgment in favor of the defendants and against the plaintiff as to the title to the lands in controversy and for judgment on the cross-petition of the defendants, Mary B. Secor and D. N. Fink, trustees of George W. Barnes, for the sum of $1,720, for rents and for costs.

The attorney for plaintiff set out the following assignments of error:

"1. The said trial court erred in overruling the motion of the plaintiff in error for a new trial.

"2. That the trial court erred in rendering judgment for the defendants in error and against the plaintiff in error.

"3. That the judgment rendered by the trial court is not sustained by the evidence.

"4. That the judgment rendered by the trial court is contrary to the law and evidence.

"5. That the court erred at the trial of said cause, to wit: to all of which ruling of the court the plaintiff in error at the time duly excepted."

The cause was tried to the court without the intervention of a jury and the court found, among other things:

"The court further finds that the defendant, W. E. Privette, on the 9th day of September, 1911, at the time of the receipt of the conveyance of the land in controversy by him from the plaintiff, made a full, fair and complete disclosure to her of all material facts affecting the title to the land in Okmulgee county, Okla., transferred to the plaintiff in partial payment of the conveyance for the land in controversy, and that the defendant, W. E. Privette, was guilty of no fraud and made no misrepresentation of fact to the plaintiff in said transaction" —and further found that the grantees of W. E. Privette were innocent purchasers for value, without notice of any defect in the title, and that they paid a valuable consideration for the Tulsa county land, and that the plaintiff, by her acceptance of the $150 and permission to retain possession of the lands in controversy for the year 1912, condoned any failure of the defendant, W. E. Privette, to deliver her possession of the land in Okmulgee county on January 1, 1912, and that the plaintiff, by signing and issuing a disclaimer of title to the land in controversy in October, 1912, was thereby estopped from attacking the title of defendants E. C. Bothwell and Harry H. Bell, and their grantees, and that the defendant Mary B. Secor was entitled to recover rents against the plaintiff in the sum of $1,720 for the use of the land in controversy since January 1, 1914. The court dismissed the plaintiff's petition and quieted title to the Tulsa county land against the plaintiff.

This being a case of purely equitable cognizance, the rule to be applied here is that after weighing the evidence, if this court, on appeal, finds that the judgment of the trial court is not clearly against the weight of the evidence, it will not disturb the judgment of the trial court.

The evidence discloses that the Tulsa county land was sold by the defendant Privette to the plaintiff a short time before the exchange of land was made between the parties: that the plaintiff and her son made the first overtures to exchange the Tulsa county land, belonging to the plaintiff, for the Okmulgee county lands, belonging to the defendant; that the defendant had had

three firms of attorneys to examine his title to the Okmulgee county land and all of them had passed favorably upon his title; that just two days before the exchange of lands, he secured the written opinion of Davidson and Williams, attorneys of Tulsa, in which opinion the case of Lamb v. Baker was referred to, which was handed down by this court on January 10, 1911, as the unanimous opinion of the court that Pauline Bailey, nee McNac, and Polly Brown, nee McNac, were the sole and only heirs of their father, Charlie McNac, at the date of his death. The said Charlie McNac was the Creek allottee of the Okmulgee county lands and the said Pauline Bailey and Polly Brown were his children by a Seminole mother and enrolled as members of the Seminole Tribe; and that this case had been appealed to the Supreme Court of the United States, but that it was the opinion of the said firm of Davidson and Williams that the Supreme Court of the United States would affirm the decision of the Supreme Court of the state of Oklahoma. The opinion referred to is found in 27 Okla. 739, 117 Pac. 189.

Defendant Privette testified that he turned over these three written opinions to the plaintiff and her son and that the same were read over to them at the time of the exchange of the lands on September 9, 1911. The plaintiff and her son, in their testimony, deny this, but the clerk in the bank, where the exchange was consummated, said he was present in the bank, and, while he did not know what documents were being read to the plaintiff and her son, that there were several documents before them and that defendant Privette was reading some of them to plaintiff. This testimony, coupled with the fact that the defendant Privette obtained the opinion of Davidson and Williams two days before the trade was finally closed, leads us to believe, as no doubt it led the trial court to determine, that this opinion was obtained and was used in the final exchange for the purpose of determining the sufficiency of defendant's title.

It is further significant that this court again on November 14, 1911, after the exchange of the lands, in the case of Hughes Land Co. et al. v. Bailey et al., 30 Okla. 194, 120 Pac. 290, in which case the sole and only question involved was the question of the right of Pauline Bailey and Polly Brown to inherit the Creek allotment of their father, Charlie McNac, held that Pauline Bailey and Polly Brown were the sole and only heirs of Charlie McNac and inherited the Okmulgee county lands, the title to

which is in dispute here, from their deceased father to the exclusion of a half-brother, Thomas Tea, and in said case the case of Lamb v. Baker, supra, is reaffirmed. Then, based upon the unanimous opinions of this court in the above cases, the defendant Privette cannot be charged with having misrepresented the question of title he acquired from Pauline Bailey and Polly Brown to the Okmulgee county land upon the legal question of heirship. It will be further observed that the question of whether they were the rightful heirs or not was not raised in this case until the 4th day of November, 1919, the date of trial, and then by a supplemental petition filed by the plaintiff, showing thereby that this question was not considered by the plaintiff and her attorneys until practically four years after the cause was filed. Then, we must determine that the defendant Privette in giving a general warranty deed to the Okmulgee county land did not act in bad faith and was not guilty of any fraud in assuring the plaintiff that he had a good and sufficient title to the Okmulgee county land.

It is urged that one George C. Beidleman had secured the title to the Okmulgee county land from one of the half-brothers and the heirs of a half-brother and half-sister of Charlie McNac, but did not obtain such title until some time in 1919, long after this trade was made.

The Supreme Court of the United States, several years after this transaction, in the cases of Washington v. Miller, 59 L. Ed. 295, and McDougal v. McKay, 59 L. Ed. 1001, held a contrary view to the decisions of the Supreme Court of this state, above referred to, and held in effect, that a Seminole citizen, although of the nearest blood kin, could not inherit a deceased Creek allottee's land, where there was kin of Creek blood living, who could inherit, and that the Creek blood kin inherited to the exclusion of the Seminole kindred, and this court has, since said opinions, overruled the cases of Lamb v. Baker, supra, and Hughes Land Co. et al. v. Bailey et al., supra, and adopted the rule established by the Supreme Court of the United States in the case of Grease v. McNac et al., 102 Okla. 44, 225 Pac. 524, written by Justice Nicholson. But this difference of opinion of the courts was on purely a question of law, and in a recent opinion of this court, in the case of Barnett v. Douglas et al., 102 Okla. 85, 226 Pac. 1035, it was held that:

"A mere mistake of law, not accompanied by other circumstances demanding equitable relief, constitutes no ground for reformation

of a deed to lands based on such mistake" —and is decisive of the question raised here upon the legal proposition as to the question of title to the Okmulgee county land.

We are, therefore, of the opinion that the trial court was right when it decided there was no fraud in the inception of this contract, and that the defendant Privette, at the time of the transaction, made a full, fair and complete disclosure to plaintiff of all material facts affecting the title to the land in Okmulgee county.

The plaintiff signed a disclaimer of all right, title, and interest in the land other than as the tenant of Privette shortly after the transaction, and, while it is urged that this disclaimer was for the sole and only purpose of permitting Privette to obtain a loan upon the land, yet knowledge of the fact of its existence obtained by third parties was sufficient to entitle them to rely upon said disclaimer in deciding whether they should purchase the land from Privette, and Bell and Bothwell, the grantees of Privette, both say they relied upon this knowledge that this disclaimer existed.

It is further urged that plaintiff remained in possession of the land in controversy. This court, in the case of Flesher v. Callahan et al., 32 Okla. 283, 122 Pac. 489, held:

"By the execution and delivery of a deed in general terms, the entire legal interest in the premises vests in the grantee, and if the grantor continues in possession afterward, his possession will be that either of tenant or trustee of the grantee. He will be regarded as holding the premises in subserviency to the grantee and nothing short of an explicit disclaimer of such a relation and a notorious assertion of right to himself, will be sufficient to change the character of his possession. In such case, the grantor is not deemed, in law, to have adverse possession against his grantee, or those deriving title from him."

To the same effect are the cases of Collins Investment Co. v. Waide. 70 Okla. 191, 173 Pac. 835; Riddle v. Keechi Oil & Gas Co., 74 Okla. 73, 176 Pac. 737; Rowsey v. Jamison, 46 Okla. 780, 149 Pac. 880; Wolverine Oil Co. v. Parks, 79 Okla. 318, 193 Pac. 624.

The plaintiff claims that her first knowledge of any defect in the title to the Okmulgee county land was obtained by her in August, 1912, when she was served with summons in the case of Pauline Bailey and Poly Brown et al. v. Privette, herself, Beidleman et al. She appeared in this case, employed counsel and filed answer, claiming title to the Okmulgee county land, but she took no steps at that time to rescind the exchange of land between herself and the defendant Privette. She never took any legal steps to rescind this contract until the date this action was filed on the 24th day of February, 1914, after oil had been discovered upon this land and adjacent land and at a time when she was about to be dispossessed by court proceedings and after notice to quit had been served upon her. We hold that such action on her part did not constitute proper diligence in seeking to rescind. Section 5079, Comp. Stat. 1921, requires that parties seeking to rescind must use reasonable diligence and must comply with the following rule:

"First. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind."

We are clearly of the opinion that the holding of the court that the plaintiff did not make out a proper case for rescission is not clearly against the weight of the evidence in this case.

We are of the opinion that the attempt of the plaintiff to recover the lands in this case is not the proper ground of relief, and we are further of the opinion that the plaintiff's right to recover in this case should be based upon the general warranty in the deed from defendant, Privette, to the plaintiff of the title to the Okmulgee county land, for, in the light of the later opinions of the Supreme Court of the United States and of this court, heretofore referred to, unquestionably the defendant Privette did not and could not obtain title to the lands of Charlie McNae, a deceased Creek, from his two daughters, who were enrolled as citizens of the Seminole Tribe, and, in a case of this character, being one of purely equitable cognizance, particularly where general relief is prayed for, the petition containing the necessary facts, as occurs in this case, notwithstanding the fact that the plaintiff may have mistaken her remedy and misconceived her remedy, the court, having all the parties before it, will grant the proper relief.

In the case of Hardy et ux. v. Ladow et al., 72 Kan. 174, 83 Pac. 401, the court held:

"The demand of the plaintiff in his petition does not necessarily limit the court in the judgment which it may render. It is the case made by the pleadings and the facts proven, and not the prayer of the pleader, which measure the relief that the court may award."

And, in the body of the opinion, this language occurs:

"Under the equity practice, a mistake in the demand for special relief does not preclude the court from granting the proper relief under the general prayer."

And this court, in the case of Bynum v. Strain, 95 Okla. 45, 218 Pac. 883, held:

"Where a pleading is indorsed a petition, as the statute provides, and contains a statement of facts, as the statute requires, which show on their face and from their nature that plaintiff has wrongfully sustained a detriment, a wrong for which the law or equity provides redress, then, from the nature of the facts stated, the court, vested as it is with the dual powers of a chancellor and a court of law, will determine and grant the proper relief."

Again, in the case of Fraley, Adm'r, et al. v. Wilkinson et al., 79 Okla. 21, 191 Pac. 156, this court said:

"The plaintiff's prayer for a judgment is only a matter of form, and is no part of the statement of the cause of action.

"Under the Code of Civil Procedure in force in this state, a plaintiff is required to set forth the facts constituting a cause of action, and if he states facts showing that he is entitled to a remedy, either legal or equitable, his action will not be dismissed because he has misconceived the nature of his remedial rights and has asked for equitable relief when he should have asked for a legal remedy, or asked for the wrong equitable relief, or vice versa."

Then, following the rule laid down in the above cases, it is the duty of this court to grant the proper relief in the instant case and render such judgment as should have been rendered by the trial court. The testimony and court decisions show that the title to the Okmulgee county land has failed; the brother of the defendant Privette testified that he, as the agent of his brother, had, at all times, offered to make good the warranty of title, as contained in his brother's deed, out of property in his hands, belonging to his brother. The defendant Privette, on the witness stand, in the trial of this case, said:

"I gave them a warranty deed to the land and I will take it up and I will give them the money for the land any time if they want it."

The testimony of the defendant himself, shows that the Okmulgee county land is worth $3,200, and that he is ready, willing, and able to pay plaintiff this amount. We are, therefore, clearly of the opinion that the trial court should not have dismissed plaintiff's action; that it would be only an act of equity and justice that plaintiff should have and recover of and from said defendant Privette the value of the Okmulgee county land in the sum of $3,200, and she should retain the $1,250 difference in the value of the two tracts, and it is, therefore, the judgment of this court that the decision of the lower court in all other respects should be and is hereby affirmed with the further judgment of this court that this plaintiff, M. A. Brown, have and recover of and from the defendant, W. E. Privette, the sum of $3,200, the value of the Okmulgee county land, with interest at six per cent. per annum from January 1, 1914, the date judgment for rents was allowed by the trial court and for her costs.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. pp. 897, 900; (2) 23 C. J. p. 213 (1926 Anno.); (3) 2 C. J. p. 143; 18 C. J. p. 290; (4) 13 C. J. p. 616; (5) 31 Cyc. p. 111; (6) 21 C. J. p. 681; (7) 1 C. J. p. 1049.